IN RE ROSA GRAY HAMILTON.

(Filed 21 September, 1921.)

**1. Habeas Corpus—Parent and Child—Courts—Juvenile Courts—Superior Courts—Jurisdiction.**

The Juvenile Court act, C. S., 5039 *et seq.*, gives exclusive original jurisdiction to the Superior Court where the custody of a child less than sixteen years of age is in question, and establishes the juvenile courts as separate, though not necessarily independent parts of the Superior Courts for the administration of the act, and makes the clerks of the Superior Courts judges of the juvenile courts.

**2. Same—Appeal.**

The Juvenile Court Act, C. S., 5039 *et seq.*, provides in a later section that the term "court," when used without modification, shall refer to the juvenile court, and provides for an appeal from any judgment of that court to the Superior Court.

**3. Same—Review—Superior Court.**

Where the Superior Court judge has referred a proceeding brought by a husband in that court for the custody of his child, less than sixteen years of age, and the matter comes on appeal to the Superior Court again, the validity of the order sending or transferring the petition to the juvenile court for original investigation does not present a controlling question, or affect the jurisdiction of the Superior Court on the appeal, for thereon the judge thereof has ample authority to hear the case, either because it was properly instituted in the first instance or by virtue of the appeal. C. S., 5039 *et seq.*

**4. Habeas Corpus—Appeal and Error—Findings—Evidence.**

Where the proceedings for the custody of a child under sixteen years has been transferred to the juvenile court, and comes again to the Superior Court judge on appeal, the judge of the latter court has authority to review the findings of fact and the judgment of the former court, under the supervision and control given him by the statute, C. S., 5039 *et seq.*, and his findings upon competent evidence are conclusive on appeal to the Supreme Court.

**5. Same—Interest of Child—Grandparents.**

While *prima facie* the parent has the right to the custody of his child in preference to others, this right is not an absolute one and must yield when the best interest of the child requires it; and when the father has filed his petition in *habeas corpus* proceeding for the custody of his child in the possession of his deceased wife's parents, the award of the Superior Court judge for the respondents upon findings, sustained by the evidence, that the father was an unsuitable person, and that the best interest of the child required that she should remain with her grandparents, will not be disturbed in the Supreme Court on appeal.

WALKER, J., dissenting.

APPEAL by petitioner from *Allen, J.,* at chambers, 4 March, 1921, from BEAUFORT.

This is a petition for a writ of *habeas corpus* to determine the right to the custody of a child fifteen months of age.

The petition was filed before one of the judges of the Superior Court, who transferred the same to the juvenile court. The judge of the juvenile court heard the affidavits and evidence, and made his findings of fact and adjudged that the petitioner, who is the father of the child, was entitled to her custody.

The respondents, who are the maternal grandparents of the child, appealed to the judge of the Superior Court, who heard the evidence and affidavits and reversed the findings and order of the clerk, and adjudged that the respondents were entitled to the custody of the child.

The following are the facts found by his Honor, and his order thereon:

"1. That the petitioner, R. H. Hamilton, in November, 1917, married Aleen Davis, daughter of respondents, George D. Davis and Bettie Davis, against the will of her parents, and that in the fall of 1918 the infant, Rosa Gray Hamilton, was born. That in January, 1919, the said Aleen Hamilton contracted influenza and in February, 1919, was carried, at her request, by the said R. H. Hamilton, her husband, to the home of respondents, the father and mother of Aleen Hamilton, where she and her child, Rosa Gray Hamilton, then four months of age, remained, the said Aleen Hamilton continuing in poor health and requiring care and medical attention. That following influenza, and as a consequence thereof, the said Aleen Hamilton developed tuberculosis, and on 26 December, 1919, died at the home of her parents.

"2. That during the time the said Aleen Hamilton and her infant child, Rosa Gray Hamilton, were at the home of her parents, the respondents herein, the said R. H. Hamilton, petitioner, furnished nothing for the support and maintenance, medicine, or medical attention of said Aleen Hamilton or the infant child, with the exception of one bottle of Wampoles Cod Liver Oil and a small quantity of fresh meat, both of which were furnished in February, 1919, notwithstanding the request of said Aleen Hamilton of her husband, the said R. H. Hamilton, that he contribute to the support of her and their child, nor did he visit them after February, nor show the personal attention which indicated any interest in them and their welfare, living at the time not more than one mile away, and that his conduct and attitude during the year 1919 constituted an abandonment of his wife and child.

"3. That on 6 August, 1919, the said Aleen Hamilton, wife of petitioner, realizing that she could not live, made her last will and testament, which was prepared by her, in her own handwriting and without suggestion or influence from others, wherein she directed that her child, Rosa Gray Hamilton, be left in the care, custody, and jurisdiction of George

Davis and Bettie Davis, the respondents, during their lifetime, and at their death to her sister, Ina Davis, which is set out in the record.

"4. That during the entire time from February, 1919, until the death of Aleen Hamilton, respondents George D. Davis and Bettie Davis provided for and supported the said Aleen Hamilton, providing for her medical attention and medicine, and paying all of her funeral expenses, except $25 on a coffin, upon which the respondents paid $75 and the petitioner paid $25.

"5. That the respondents rent a comfortable home in the town of Pantego, have educated all of their children in the Pantego High School, their two daughters having held certificates as teachers; that respondents are members of the Christian Church and are people of good character and able to provide for the tuition and education of the said infant child, Rosa Gray Hamilton.

"6. That the said Rosa Gray Hamilton is afflicted with spinal trouble, requiring the treatment of a specialist, and respondents are ready, able and willing to provide this treatment for the child, and have frequently offered and endeavored to do so since this cause has been pending.

"7. That the petitioner, R. H. Hamilton, is thirty-five years of age, has no property and is unthrifty, and should said infant child be awarded to him it will be in effect awarding her to the custody of his father and mother, at whose home he lives, while if the custody of the child is left with George D. Davis and Bettie Davis, the parents of the dead mother, she would have the advantage not only of the care of her maternal grandmother and grandfather, but also of the sister of the dead mother, Ina Davis, whom the court finds to be a young woman of character, refinement and education, and whose influence will be an advantage to said infant in her upbringing.

"8. That the petitioner, R. H. Hamilton, is not a fit, suitable or proper person to have the care and custody of this infant girl child, now a little more than two years of age, and that the best interest and welfare of the said child will be subserved by leaving her in the custody and care of respondents, and it is so ordered. The order of the clerk is reversed."

From this judgment, awarding the custody of the child to the respondents, the petitioner appealed.

*Ward & Grimes, and Small, MacLean, Bragaw & Rodman* for respondents.

*Tooly & McMullan* for petitioner.

STACY, J. The Juvenile Court Act (C. S., 5039 *et seq.*) provides that the Superior Courts shall have exclusive original jurisdiction of any

case of a child less than sixteen years of age "whose custody is subject to controversy." By this same law juvenile courts are established as separate parts of the Superior Courts for the administration of the act, and the clerk of the Superior Court of each county is made the judge of the Juvenile Court.

It is also provided in a later section that the term "Court," when used without modification, shall refer to the Juvenile Court, and that an appeal may be taken from any judgment or order of the Juvenile Court to the Superior Court.

It thus appears that the act confers jurisdiction upon the Superior Courts, and that the Juvenile Courts, as separate parts (but not necessarily as independent parts) of the Superior Courts of the district, have been created and organized for the administration of the law and for the hearing of matters and causes arising thereunder. *S. v. Coble,* 181 N. C., 554.

Again, in *S. v. Burnett,* 179 N. C., 740, it was held that the act "creates no limitations on the jurisdiction of the Superior Courts in these cases which, under the first sections of the act and by virtue of its powers, as a court of general jurisdiction administering both law and equity, may always, on proper application and appropriate writ, make inquiry and investigations into the status and conditions of children disposed of under the statute, and make such orders and decrees therein as the right and justice of the case may require." This supervision and oversight of the Superior Courts, of course, should be exercised in an orderly way by appeal from the Juvenile Court, where such is provided by the statute, and otherwise by appropriate writ, where no appeal is available.

Assuming this to be the proper interpretation of the law, we need not consider the regularity of the order transferring or sending the petition to the Juvenile Court for original investigation. This could have no effect upon the jurisdiction of the Superior Court, nor would it make any material difference, for when the matter again reached the judge of the Superior Court he had ample authority to hear the case, either because it was properly instituted in the first instance, or by virtue of the appeal from the Juvenile Court. Therefore, viewing it in any light, the case was competently before the Superior Court in the last instance for final adjudication.

His Honor also had authority to review the findings of fact and judgment of the clerk, which were under the supervision and control of the Superior Court. *Mills v. McDaniel,* 161 N. C., 112.

The findings of fact made by the judge of the Superior Court, found as they are upon competent evidence, are also conclusive on us *(Stokes v.*

*Cogdell,* 153 N. C., 181), and we must therefore base our judgment upon his findings, which amply sustain his order.

We recognize fully the principle that *prima facie* the parent has the right to the custody of his child in preference to others, but that this right is not an absolute one and must yield when the best interest of the child requires it *(In re Warren,* 178 N. C., 43), and his Honor has found as a fact that the petitioner "is not a fit, suitable or proper person to have the care and custody of this infant girl, and that the best interest and welfare of the child will be subserved by leaving her in the custody and care of the respondents." He also finds that the child is afflicted in an unusual way by spinal trouble, requiring the treatment of a specialist, and that the respondents are ready, able and willing to provide this treatment for the child, and have frequently offered and endeavored to do so, and that the petitioner had practically abandoned his family prior to the death of his wife.

Upon the record the judgment of the Superior Court must be sustained.

Affirmed.

WALKER, J., dissents because the court did not have the requisite jurisdiction under the Juvenile Court statute, and further because if it had such jurisdiction there was not any evidence that justified the findings as to fact and law, or which should deprive the father of, or impair his preferential right to, the custody of his child. One of the most important and essential facts was not found by the court below, and the failure of the father to visit his wife and child, if there was such a failure, is fully explained by the testimony, which shows that it was not the father's fault, but the fault of those who now seek to retain the custody of the child. The right of the father, in my opinion, should be upheld upon the principle so often applied by us in such cases, when the father's natural right was recognized and enforced. *Newsome v. Bunch,* 144 N. C., 15. In that case, at page 18, this Court said, and it is strikingly applicable to the facts in this appeal: "While the Court, in the exercise of a sound discretion, may order the child into the custody of some other person other than the father, when the facts and circumstances justify such a disposition of the child, we do not think that any such case is presented in this record as should induce us to adopt that course and except this case from the general rule. The father has done nothing by which he has incurred a forfeiture of his right to the custody of his offspring. There is no room for the exercise even of a sound discretion in favor of the grandparents who have possession of the child. Speaking for himself, and not committing the Court to his view, the writer of this opinion would hesitate to remove the child from its

present custody, if the law were more elastic and we were vested with a larger discretion than is given by the law; but we must follow the precedents and the general principles of justice established by them, though the result may be contrary to what we may consider as the real merits of the particular case, and though by the facts, even as found by the court, our sympathies may be enlisted in behalf of the grandparents. The insistence upon his strict right under the circumstances may not be very creditable to the petitioner, yet the law is inexorable in such a case, and cannot be made to yield in deference to a mere sentiment or to a tender regard for the feeling of one of the parties; nor are we permitted to exercise an arbitrary discretion." The *Newsome case* has been frequently approved and affirmed. *In re Jones,* 153 N. C., 312; *In re Turner,* 151 N. C., 474; *In re Fain,* 172 N. C., 790; *Howell v. Soloman,* 167 N. C., 588; *Brickell v. Hines,* 179 N. C., 254, where the cases are collected. See, also, *Latham v. Ellis,* 116 N. C., 30.

The mother of this child is dead. The father is able to take care of the child, and if the evidence is at all credible, is better able to do so than those to whom its custody has been awarded. It has been said by this Court in the cases above cited, that the parent has the preferred right of custody and for cogent reasons, and in *Brickell v. Hines, supra,* by *Justice Hoke,* that "this right, being a natural and substantive one, may not be lightly denied or interfered with by action of the courts." It is true, as we have often held, that the welfare of the child deserves and should have consideration, but the Court should proceed cautiously and not deprive the father of his right, except upon clear and strong evidence, which is not present in this case.