## SOUTH CAROLINA *v.* BAILEY.

No. 685.   Argued April 21, 1933.—Decided May 22, 1933.

*Mr. William C. Wolfe,* with whom *Messrs. John M. Daniel,* Attorney General of South Carolina, *J. Ivey Humphrey* and *J. Ingraham Wilson,* Assistant Attorneys General, were on the brief, for petitioner.

*Mr. Clyde R. Hoey* for respondent.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

Sunday night, May 1st, 1932, (probably about 10:30 Eastern Time) Hunt, a police officer, was murdered on a well-lighted street in Greenville, South Carolina. An affidavit by policeman Corea, May 5th, before a local magistrate charged Ray Bailey, respondent here, with the crime. As provided by the federal statute, demand was made upon the Governor of North Carolina for delivery of the accused as a fugitive from justice. Bramlett and Hammond were designated as agents to bring him back.

This requisition was promptly honored; and a warrant issued directing officers in North Carolina to arrest respondent, "Afford him such opportunity to sue out a writ of habeas corpus as is prescribed by the laws of this State and to thereafter deliver him into the custody of the said C. R. Bramlett and L. W. Hammond to be taken back to the said State, from which he fled." June 7th, acting as commanded, the sheriff of Jackson County took him into custody. He at once obtained a writ of habeas corpus from the local Superior Court. His petition therefor alleged illegality of custody " for that the defendant is charged with an offense in the State of South Carolina, to-wit, the murder of A. B. Hunt, on or about the 1st day of May, 1932, when, at which time, this affiant was in the State of North Carolina, and was not in the State of South Carolina."

The sheriff in his return to the writ alleged that Bailey " is being legally and lawfully held in custody after having been arrested on a warrant of extradition issued by the Governor of North Carolina on the 9th day of May, 1932, upon requisition for same by the Governor of South Carolina, on and for a charge of murder alleged to have been committed in the State of South Carolina, said war-

·rant of extradition having been duly executed by me on the said Ray Bailey, alias Ray Keith, on the 7th day of June, 1932."

The Judge of the Superior Court sitting at Sylva, N.C., heard the cause June 27th, 1932. A number of affidavits were received without objection, and thirty or more witnesses were examined in open court. At the conclusion of the testimony the Judge announced:

"Gentlemen, I think there has been an issue raised here, I don't think I have a right to pass on, that of identity, and at the same time I don't think it would be fair to the defendant to send him to South Carolina to stand a trial, as it would be very expensive to'him and his folks; under the testimony I don't think there would be a jury anywhere'that would ever find him guilty beyond a reasonable doubt. I shall, therefore, discharge him under the writ and let him go."

This formal judgment followed:

"1. That Ray Bailey (alias Ray Keith) is a citizen and resident of the State of North Carolina.

"2. That he is not a fugitive from justice from the State of South Carolina, and was not present at the time of the commission of the alleged crime at Greenville, South Carolina.

"3. That the State of South Carolina has failed to show probable cause for holding the said Ray Bailey in custody, or that he committed the alleged crime—the murder of A. B. Hunt, and has failed to produce sufficient evidence to warrant the Court in refusing the Writ, and the Court finding from all the evidence introduced in this cause that the petitioner is entitled to the relief sought in his petition and the Writ of Habeas Corpus; . . .

"It is, therefore, upon motion . . . considered, ordered, decreed and adjudged by the Court that the petition and Writ be allowed and that the defendant be and he is hereby released from custody."

The Supreme Court of North Carolina reviewed the cause upon certiorari under title —" In the matter of Ray Bailey alias Ray Keith." It affirmed the challenged judgment and, among other things, said [203 N.C. 362; 166 S.E. 165]—

" In the case at bar a controversy of fact arose between the contending parties, that is the demanding state and the prisoner, as to whether the prisoner was in the demanding state at the time the alleged offense was committed. The Writ of Habeas Corpus was created and fashioned for the express purpose of determining such controverted fact. The statute and public policy require that such fact be determined in a summary manner. Doubtless in given cases different minds would work out diverse conclusions, but after all it is perhaps wise that the determination of the ultimate fact should be lodged in the sound legal discretion of an impartial judge, commissioned by the law of the land and the inherent sense of the responsibility of his high office ' to do what to justice appertains.' He hears the witnesses and observes their mental leanings or bias toward the question involved. He senses the atmosphere of the case. Moreover it would doubtless be a dangerous experiment to undertake by a judicial decree of an appellate court to prescribe a legal strait-jacket for such matters.

" Exercising the power delegated by statute and supported in principle by the decisions of this state, the hearing judge found certain facts and set them forth in his judgment. The last inquiry in the solution of the appeal is: What is the effect of the findings of fact set out in the judgment? Whatever may be the variable conclusions reached by other courts, that inquiry is settled in North Carolina. The law is thus stated: ' The findings of fact made by the judge of the Superior Court, found as they are upon competent evidence, are also conclusive on us,

and we must therefore base our judgment upon his findings, which amply sustain his order.' *In re Hamilton*, 182 N.C. 44, 108 S.E. 385. See also *Clegg* v. *Clegg*, 186 N.C. 28, 118 S.E. 824; *In re Hayes*, 200 N.C. 133, 156 S.E. 791."

The matter is here on certiorari.

No question is raised concerning the form or adequacy of the writ issued by the Governor of North Carolina.

Prima facie Bailey was in lawful custody and upon him rested the burden of overcoming this presumption by proof. *McNichols* v. *Pease*, 207 U.S. 100, 109.

This he undertook to do. His own affidavit positively asserted his presence in North Carolina when the alleged crime occurred. He narrated his movements, all within that State, from Sunday morning, May 1st, when he was at Asheville (north of Greenville, S.C., sixty-one miles over a well-paved highway) until 5:30 o'clock Monday morning when he entered the hospital at Sylva, N.C., fifty miles southwest of Asheville (a paved highway connects these towns) under an assumed name. A number of affidavits and the testimony of several witnesses given in open court tend to support his narrative.

He claimed that he left Asheville about dark Sunday night, May 1st, in a car with a friend with whom he had been drinking and gambling during the afternoon; both were under the influence of alcohol; they were going towards Bailey's home in Yancey County; at a point on the roadside some twenty-five miles north of Asheville, between ten and eleven o'clock, P.M. (Central time), this friend, after shooting him, left him on the roadside; shortly thereafter two strangers appeared, put him in their car and carried him to his brother's house in Asheville; from there an ambulance conveyed him to the hospital, fifty miles away, where he gave an assumed name.

The doctors found two bullets had passed through his body; also that a bullet had wounded his right hand at the base of the thumb.

Although present in court at the hearing Bailey did not take the stand, and several persons who probably could have thrown much light upon the issue were neither called nor accounted for. Among these were the respondent's friend who shot him, the brother to whose house at Asheville respondent was taken, two women said to have been there, and the doctor who there dressed his wounds. Other important witnesses made *ex parte* affidavits.

Such a tale should have been subjected to rigid scrutiny. The hearing was in no sense a criminal trial and the judge would have been well advised if he had demanded that the prisoner present himself for examination; also should show what effort had been made to secure the presence of important witnesses in order that they might be questioned. Viewed as a whole the evidence for respondent leaves much to be desired—certainly it is unsatisfactory. If true, it supports the conclusions of the Judge that Bailey had not fled from the justice of South Carolina.

On the other hand, the demanding State presented three witnesses—police officers Corea and Singleton and a merchant—residents of Greenville, S.C., who identified Bailey and positively asserted that in their presence he shot officer Hunt about 10:30 Sunday night, May 1st. They had never seen Bailey until he suddenly appeared and commenced to shoot. The officers gave a circumstantial account of the homicide, declared they were within a few feet of the assailant, shot at him nine times after he had fatally wounded Hunt and thought they wounded him in the body and right hand. They further said that during the melee an automobile stopped nearby and its occupants shot at them many times. The culprit finally entered and escaped in that car. The whole affray continued for only a very short time—a few moments.

While some circumstances tend to support these statements, they are not free from doubt. If true, Bailey was a fugitive.

The record presents an irreconcilable conflict of evidence. It is not possible to say with certainty where the truth lies.

The rights of the parties depend upon the proper construction and application of Art. IV, § 2, par. 2, of the Federal Constitution [1] and § 5278, Rev. Stat. (U.S. Code, Tit. 18, § 662) [2] derived from the Act of February 12, 1793.

The demanding State asserted a right to the custody of the respondent under the Federal Constitution and statute. He claimed that these impliedly forbade his surrender since the evidence made it clear that he was beyond the limits of South Carolina at the time of the homicide and, therefore, was not a fugitive from the justice of that State.

---

[1] A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

[2] Rev. Stats. § 5278. Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or Territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within six months from the time of the arrest, the prisoner may be discharged. All costs or expenses incurred in the apprehending, securing, and transmitting such fugitive to the State or Territory making such demand, shall be paid by such State or Territory.

These questions of federal right were properly submitted for consideration by the state court upon the return to the writ of habeas corpus. And it was the duty of that court to administer the law prescribed by the Constitution and statute of the United States, as construed by this Court. *Second Employers' Liability Cases*, 223 U.S. 1, 55; *Cincinnati, New Orleans & Texas Pacific Ry. Co.* v. *Rankin*, 241 U.S. 319, 326.

In effect the matter for determination was whether the accused appeared to be held contrary to the Federal Constitution and laws. The ultimate question of his guilt or innocence of the charge of murder preferred against him did not arise—the sole point for decision related to his absence from the State of South Carolina at the time of the crime. It was wholly beyond the province of the judge to speculate, as he seems to have done, concerning the probable outcome of any trial which might follow rendition to the demanding State. The circumstances require this Court to search the record and determine for ourselves whether upon the facts presented the courts below reached the proper conclusion.

The applicable provision of the Federal Constitution and of the statute intended to implement it have often been considered here. Some of the more important cases are collected in the margin.[3]

In *Munsey* v. *Clough*, 196 U.S. 364, 374, through Mr. Justice Peckham, this Court said—" When it is conceded, or when it is so conclusively proved, that no question can be made that the person was not within the demanding State when the crime is said to have been committed, and

---

[3] *Kentucky* v. *Dennison*, 24 How. 66; *Ex parte Reggel*, 114 U.S. 642; *Roberts* v. *Reilly*, 116 U.S. 80; *Hyatt* v. *Corkran*, 188 U.S. 691; *Munsey* v. *Clough*, 196 U.S. 364; *Appleyard* v. *Massachusetts*, 203 U.S. 222; *McNichols* v. *Pease*, 207 U.S. 100; *Drew* v. *Thaw*, 235 U.S. 432; *Innes* v. *Tobin*, 240 U.S. 127; *Biddinger* v. *Commissioner of Police*, 245 U.S. 128.

his arrest is sought on the ground only of a constructive presence at that time, in the demanding State, then the court will discharge the defendant. *Hyatt* v. *Corkran,* 188 U.S. 691, affirming the judgment of the New York Court of Appeals, 172 N.Y. 176; 64 N.E. 825. But the court will not discharge a defendant arrested under the governor's warrant where there is merely contradictory evidence on the subject of presence in or absence from the State, as *habeas corpus* is not the proper proceeding to try the question of alibi, or any question as to the guilt or innocence of the accused."

Speaking for the Court in *McNichols* v. *Pease,* 207 U.S. 100, 112, Mr. Justice Harlan said—"When a person is held in custody as a fugitive from justice under an extradition warrant, in proper form, and showing upon its face all that is required by law to be shown as a prerequisite to its being issued, he should not be discharged from custody unless it is made clearly and satisfactorily to appear that he is not a fugitive from justice within the meaning of the Constitution and laws of the United States. We may repeat the thought expressed in Appleyard's case, above cited, that a faithful, vigorous enforcement of the constitutional and statutory provisions relating to fugitives from justice is vital to the harmony and welfare of the States, and that ' while a State should take care, within the limits of the law, that the rights of its people are protected against illegal action, the judicial authorities of the Union should equally take care that the provisions of the Constitution be not so narrowly interpreted as to enable offenders against the laws of a State to find a permanent asylum in the territory of another State.' "

Considering the Constitution and statute and the declarations of this Court, we may not properly approve the discharge of the respondent unless it appears from the record that he succeeded in showing by clear and satisfactory evidence that he was outside the limits of South

Carolina at the time of the homicide. Stated otherwise, he should not have been released unless it appeared beyond reasonable doubt that he was without the State of South Carolina when the alleged offense was committed and, consequently, could not be a fugitive from her justice.

The record discloses only a conflict of evidence; the requirement which we have indicated has not been met; and the challenged judgment must be reversed.

The cause will be remanded to the Supreme Court of North Carolina for further proceedings not inconsistent with this opinion.

*Reversed.*

MR. JUSTICE BRANDEIS and MR. JUSTICE BUTLER are of the opinion that the evidence, while possibly sufficient to sustain, does not require a finding that there is probable cause to believe that the accused was a fugitive from South Carolina, and therefore this court is not warranted in reversing the judgment of the Supreme Court of North Carolina.