**RICHARDS v. MATTHEWS.**

**No. 11538.**

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 28, 1953.

Decided July 30, 1953.

Washington, Circuit Judge, dissented.

Mr. E. Lewis Ferrell, Washington, D. C., for appellant.

Mr. Edward O. Fennell, Asst. U. S. Atty., Washington, D. C., with whom Messrs. Charles M. Irelan, U. S. Atty. at time of argument, and William R. Glendon and William E. Kirk, Jr., Asst. U. S. Attys. at time of argument, Washington, D. C., and Bertram M. Landesman, Asst. U. S. Atty., Washington, D. C., were on the brief for appellee. Mr. Leo A. Rover, U. S. Atty., Washington, D. C., entered his appearance for appellee.

Mr. Joseph M. Howard, Asst. U. S. Atty. at time the record was filed, Washington, D. C., also entered his appearance for appellee.

Before PRETTYMAN, BAZELON and WASHINGTON, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is an appeal from a denial of a petition for a writ of *habeas corpus* in an extradition matter.

An indictment was returned against petitioner in Virginia alleging that on or about January 1, 1952, he unlawfully, feloniously and fraudulently removed from that State a certain motor vehicle, upon which he had given a lien to a bank in Orange, Virginia, the removal being without the written consent of the lienor. A Virginia statute[1] provides in pertinent part:

"Whenever any person is in possession of any personal property, including motor vehicles, * * * on which he has given a lien, and such person so in possession shall * * * fraudulently remove the same from the State, without the written consent of the owner or lienor * * * he shall be deemed guilty of the larceny thereof."

A Governor's warrant issued on the indictment, and petitioner was arrested in the District of Columbia. The Chief Judge of the District Court ordered him extradited. He applied for a writ of *habeas corpus*. A hearing was had, and the petition for the writ was ordered discharged.

The facts are not in dispute. In November, 1951, Richards, then living in Orange, Virginia, bought an automobile from the Chief of Police of Orange. The price was $750. Richards paid $250 in cash of his own and borrowed the remaining $500 from the National Bank of Orange on a note secured by a chattel mortgage on the automobile. The note was payable in twelve monthly install-

1. Code of Va. § 18-178 (1950).

ments, the first installment being due on December 11 or 13, 1951. On December 5, 1951, Richards left Orange to drive to New York, where he had a season job. He drove the car in question. He left two taxicabs operating in Orange and also left his family there. In Washington the brakes burned out, and Richards parked the car in front of a garage, the owner of which he knew, and notified his brother to get the car. He returned to Orange, took one of his cabs, and proceeded to New York. He worked there until January 7, 1952. He then went to work in Washington and returned to Orange on February 5, 1952. Meantime, the automobile disappeared. The garageman said "Two fellows drove off in it". The insurance company which had a policy on the car was notified. It refused to pay. There is an indirect statement that the car was found wrecked somewhere in West Virginia.

The payment due the bank on December 11 (or 13), 1951, was not made. A warrant was sworn out for Richards. He was indicted, as we have said, for unlawfully, feloniously and fraudulently removing the car from Virginia, without the consent of his lienor, on or about January 1, 1952.

Richards says that he was not in the State of Virginia on or about January 1, 1952. That he may make that claim in the extradition proceeding or on petition for *habeas corpus* is established by many cases and is conceded by the Government.

The contentions of the State of Virginia are variously stated. The Commonwealth's Attorney from Orange was present in the District Court and was asked by the court what he had to say about the matter. He replied, "I have nothing to say except that this man, according to the statutes, committed a crime in our state, and we want him back there for trial." He explained that he had not initiated the criminal proceeding, that it was initiated by a warrant, and he presented the warrant to the grand jury. The Assistant United States Attorney who represented the defendant marshal made these two arguments: "He violated his payments, taking the car out of the state without the permission of the lienor, namely, the bank"; and "With respect to the doctrine of constructive presence by virtue of a continuing proposition here, there is no question but that this man is presumed to have been in the State of Virginia at the time the offense took place."

In the short argument presented by the Government in its brief in this court, several contentions are advanced: (1) that the real issue is whether the accused was in the demanding state on the date when the crime was in fact committed, not on an approximate date or even an incorrect date in the indictment; (2) that, under the opinions of the Supreme Court in Hyatt v. New York ex rel. Corkran[2] and of this court in Hayes v. Palmer,[3] proof might be made that the crime was in fact committed on some date other than that named in the indictment, that the date in the indictment was erroneously charged; (3) that under Stumpf v. Matthews[4] even a blank date in an indictment could be supplied by proof; (4) that Richards's admission that he drove the car out of Virginia on December 5th established "that the date intended by the Grand Jury's allegation 'on or about January 1, 1952' was actually December 5, 1951," and that therefore there was no need for the State to prove that the date in the indictment was inaccurate; and (5) that the question of fugitivity is not limited to proof of an offense on the exact date charged but that, as Mr. Justice Holmes remarked in Strassheim v. Daily,[5] when "it appears that the prisoner was in the state in the neighborhood of the time alleged it is enough."

These contentions of the Government rest upon one or the other of two propositions; first, that December 5, 1951, was "on or about January 1, 1952," or in

2. 1903, 188 U.S. 691, 711, 23 S.Ct. 456, 47 L.Ed. 657, 661.

3. 1903, 21 App.D.C. 450.

4. 1952, 90 U.S.App.D.C. 177, 195 F.2d 35.

5. 1911, 221 U.S. 280, 285, 31 S.Ct. 558, 55 L.Ed. 735, 738.

that neighborhood; or, second, that the crime was committed on December 5th and the allegation in the indictment was erroneous. Both of these propositions proceed from the premise, which the Government emphasizes by repeating, that the crime is the act of removing a vehicle from the State without the consent of the lienor.

Before stating the reasoning which leads to our conclusion, we must first delimit the problem by pointing out some negatives. In the first place, the Uniform Criminal Extradition Act, now in effect in thirty-six states, which embodies the so-called constructive presence doctrine, is not in effect in this jurisdiction. Section 6 of that Act provides that a person is to be extradited if he commits an act in the asylum state intentionally resulting in a crime in the demanding state, even though he was not in the latter state at the time of the commission of the crime. The difference between that provision and the concepts of the federal statute are of substance and not mere technicality. The federal requirement is that the accused must be a fugitive from the demanding state. He must have fled from it. That means, according to many Supreme Court cases, that he must have been in the demanding state when the crime with which he is charged was committed. We are bound by the federal rule.

■ In the second place, by way of preliminary, there are some things which courts cannot and will not do in a proceeding such as this one. We will not consider the guilt or innocence of the accused. We will not try any issues in the criminal case. We will not construe any Virginia statutes. We will not inquire into the validity of the indictment. We will not attempt any findings of fact, except as they relate to fugitivity.

With these principles in mind we turn to solution of the problem. We take the face of the indictment and the undisputed facts. Richards is charged with feloniously and fraudulently removing a car from the State of Virginia, without consent of his lienor, on or about January 1, 1952. He was not in Virginia on January 1, 1952, and had not been there since December 6, 1951. So much is plain and not denied. Richards stands upon it.

The difficulty with the Government's position is that it ignores an event which occurred between December 5th and January 1st. A payment on the car became due on December 11th or 13th and was not paid. On December 5th no payments were due. On January 1st a payment was due and unpaid. Surely there is a considerable difference between driving a car out of the State when no money is due on it and driving it away when payments are due and unpaid. We do not know, and do not attempt to decide, whether the Virginia statute makes it a crime of grand larceny for a person who buys a car on credit in that State to drive it across the border at any time before payments are completed in full. If that is the law there, we would think many residents across the river from this city would be startled to learn it and many automobile dealers there would be somewhat nonplussed. What we do know is that Richards was not charged with that crime. He was charged in the indictment with fraudulently removing the car at a time when he had failed to meet payments due on it, i. e., on January 1, 1952. That the grand jury knew what it was doing and intentionally fixed the date as on or about January 1, 1952, a time when payments due were unpaid, is plain on the face of the facts, in our view.

Under these circumstances December 5, 1951, was not "on or about January 1, 1952." The case does not present a problem of mere naked chronological approximation. The problem is one of critical difference in material circumstances between two dates, and a choice by the grand jury of one of those dates. Where such a choice has been made, a court upon extradition should accept and apply it.

Moreover, neither the statute nor the indictment, upon their respective faces, charges as a crime the mere removal of a car from the State without consent of the lienor. The statute here involved is,

in its full text, the usual statute applying to the fraudulent conversion or removal of personal property subject to a lien. The statute, and likewise the indictment, has one additional pertinent word— "fraudulently"—which the Government ignores in its present argument to us. The removal must be fraudulent to constitute an offense under the statute, and the indictment in the case at bar charges a fraudulent removal. But it charges such a removal on or about January 1, 1952; it does not charge a fraudulent removal on December 5, 1951.

Of course we suppose that Richards could have been indicted for removing the car on December 5th, upon the theory that he at that time fraudulently intended not to bring it back. Under such an indictment the issue of intent would have been an element of the offense but not part of any issue as to fugitivity. Richards having been in the State on that date, he would have been extraditable upon such an indictment. But here again the answer is that the grand jury did not charge him with that offense. It did not charge him with any offense on December 5th. It did not charge him with any offense when he did not owe an overdue payment. It is not for us to tell Virginia how it should charge under its statutes, and it is not for us to construe its indictments or its statutes. We should, and we do, accept the indictment as it reads and assume that Virginia intended to do what it did.

One examining the arguments made in this case naturally thinks of that portion of the opinion of Mr. Justice Holmes in the Strassheim case, supra, in which he pointed out that an accused is extraditable under federal rules if he commits an overt act in one state with the intention that he will later complete commission of a crime by performing other acts outside that state. The acts first performed are not the criminal offense but, being done in contemplation of and with intent to commit a crime, are sufficient to make the transgressor a fugitive. But that doctrine is in precise opposition to the bases upon which the Government rests its case here. Here the Government urges, as we have pointed out, that December 5th was the date when the actual crime was committed and that the January 1st allegation was a sufficiently close allegation of that date or was in error. And it may be that the Government is well advised not to urge that doctrine from Strassheim. It may be that the evidence would fail to support a claim of fraudulent intent as of December 5th. It may be that the Virginia authorities thought they could not convict of a crime on December 5th. If the Government's claim of the fugitivity of Richards were premised upon his intent as of December 5th, we would of course have to consider and determine that question of fact. But since that claim is not urged we need not, and do not, go into it. Here again we say that the case is one in which we are impelled to take the face of the indictment and the undisputed facts.

The representative of the State of Virginia who was present in the District Court made no contention as to a crime on December 5th. All such contention is advanced in this court by the appellee United States Marshal for the District of Columbia. When we say that we take the face of the indictment, we are merely saying that we assume from the language it used that the State of Virginia wishes to try Richards for an offense committed on January 1st.

What Richards was actually charged with was committing an offense against the laws of Virginia at a time when he was not in that State. That is the plain fact of the matter upon the face of the undisputed record. And that, as has been held many times,[6] is not enough under the federal rule; the accused must not only be validly charged with a crime against a state, he must be a fugitive from that state, he must have fled from it; the expression used in many cases is that he must have left the state after committing the crime, or after it was alleged to have been committed.

6. See cases collected at 51 A.L.R. 798.

The judgment of the District Court is reversed and the case remanded with instructions to discharge the petitioner.

Reversed and remanded.

### WASHINGTON, Circuit Judge.

I am obliged to dissent. Richards, a citizen and resident of Virginia, was charged under a Virginia indictment which said that he had removed a mortgaged car from the state "on or about January 1, 1952." Actually, he says, he removed the car on December 5, 1951. His counsel conceded in the District Court that the Virginia courts would not allow him to escape conviction on the ground of the variation between the two dates. This court would hardly do so, either, if a similar case arose in this jurisdiction. Miller v. United States, 1927, 57 App.D.C. 228, 19 F.2d 702. "Ordinarily, proof of any day before the finding of the indictment, and within the statute of limitations, will be sufficient." Ledbetter v. United States, 1898, 170 U. S. 606, 612, 18 S.Ct. 774, 776, 42 L.Ed. 1162. The indictment thus adequately states the date of the offense, for purposes of trial and conviction. *A fortiori*, it is adequate for purposes of extradition: the technical sufficiency of an indictment is not open to inquiry in an extradition proceeding. Pierce v. Creecy, 1908, 210 U.S. 387, 403, 28 S.Ct. 714, 52 L.Ed. 1113. But the majority of the court nevertheless concludes that Richards should not be extradited. Why? Because, it is said, "What Richards was actually charged with was committing an offense against the laws of Virginia at a time when he was not in that State." With deference, I submit that this conclusion is unwarranted.

As I read the record and briefs, Virginia plainly charges Richards with committing a crime at a time when he was in the state. Virginia contends that the crime took place on the day the car was removed, whether that day was December 5, 1951, or some other day in the "neighborhood" of January 1, 1952. (Government's Br. 5) It complains of the *removal*, and nothing else. It charges that the removal was fraudulent, felonious and unlawful. There is nothing to indicate that Virginia concedes that removal of the car on December 5th was not at that time a crime, or that criminality would depend on whether the note was then in default. The indictment says nothing about the state of Richards' payments. The fact that on December 11 a payment became due and was not paid was not mentioned in the indictment—nor need it have been. Circumstances such as that are purely evidentiary. They may bear on the defendant's intent, and hence on his guilt or innocence of the crime charged. But we cannot inquire into such matters. That is for the courts of Virginia.[1]

In these circumstances, the Hyatt case, cited and relied on by the majority, does not support the result reached. It simply is not in point. There the relator was not within the demanding state either on the dates named in the indictment or on the dates when the acts alleged to constitute the crime actually occurred.[2]

[1] The proof at the trial might show that in fact Richards removed the car in advance of the date the payment was due, with the intent to avoid any payment at all. As Judge Schweinhaut pungently remarked: " * * * if you can't extradite a man who borrows money on an automobile and then flees the jurisdiction, intending never to go near it again and intending never to pay for the automobile, he has practically a free automobile, because he says to himself, 'They can't get me out of New York, the District of Columbia, or anywhere. All I have to do is borrow the money, get out of Virginia, and I am safe.' " (App. 23)

Whether appellant violated the statute depends primarily on his intent in removing the car. That, of course, is an issue we cannot try.

[2] In Hyatt there was "no claim of any error in the dates named in the indictment", and "no proof, or offer of proof, to show that the crimes were in truth committed on some other day than those named in the indictments, and that the dates therein named were erroneously stated". 188 U.S. at page 711, 23 S.Ct. at page 459, 47 L.Ed. 657. Exactly the contrary is true in this case. By the best of proof, relator's own admission,

Here it is undisputed that the relator was within the demanding state on the date when the acts alleged to constitute the crime took place, and that the date given in the indictment was adequately stated for purposes of trial and conviction. The Supreme Court has never released a relator under such circumstances, and I am confident it never will. Technical objections are commonly the only ones available to persons who seek to resist extradition: any discrepancies which can be found in the prosecution's allegations regarding time, place, and the like, are promptly seized upon. But the Supreme Court has consistently rejected tactics of that sort, and has emphasized the obligation of the courts to favor—rather than defeat—the constitutional and statutory mandate for extradition.[3]

If a homicide or a kidnapping had been involved here, I have little doubt that the court would order Richards' return. It would leave the merits of his story as to good motives and lack of criminal intent to be decided by the Virginia courts, as they should be. In contrast, we have in this case an alleged infringement of an economic enactment, bearing harshly on debtors; we have a debtor who tells an appealing story. But it is not our function to question the merits of the statute, or to select the laws we wish to honor in the observance. Our duty under the Constitution is to return fugitives for trial. Two judges of the District Court have held in this case that Richards should be returned: Chief Judge Laws in his executive capacity, and Judge Schweinhaut in the habeas corpus proceeding. I think they were right, and I would affirm.

it is shown that the acts alleged to constitute the crime took place on a day other than (though in the neighborhood of) the day named in the indictment. Compare Strassheim v. Daily, 1911, 221 U.S. 280, 286, 31 S.Ct. 558, 55 L.Ed. 735.

3. See, for example, State of South Carolina v. Bailey, 1933, 289 U.S. 412, 53 S. Ct. 667, 77 L.Ed. 1292; Strassheim v. Daily, supra, note 2, Appleyard v. State of Massachusetts, 1906, 203 U.S. 222, 27 S.Ct. 122, 51 L.Ed. 161; Munsey v. Clough, 1905, 196 U.S. 364, 25 S.Ct. 282, 49 L.Ed. 515; Roberts v. Reilly, 1885, 116 U.S. 80, 97, 6 S.Ct. 291, 29 L. Ed. 544; Ex parte Reggel, 1885, 114 U. S. 642, 653, 5 S.Ct. 1148, 29 L.Ed. 250. See also, Stumpf v. Matthews, 1952, 90 U.S.App.D.C. 177, 195 F.2d 35, and cases there cited and relied on, especially United States ex rel. Jackson v. Meyering, 7 Cir., 1931, 54 F.2d 621, certiorari denied 286 U.S. 542, 52 S.Ct. 498, 76 L.Ed. 1280 (nine year variation between date of crime and date alleged in indictment; extradition ordered). See, further, cases cited in my dissenting opinion in Fowler v. Ross, 1952, 90 U.S.App.D.C. 305, 318, 196 F.2d 25, 38. In Munsey v. Clough, supra, a woman was charged in a Massachusetts indictment with forging a will on November 20, 1901. She was found in New Hampshire. A Massachusetts citizen presented to the Governor of New Hampshire an affidavit saying that the woman committed the crime while in Massachusetts; it also said that she fled Massachusetts on or about November 4, 1901, which of course was more than two weeks before the date of the crime as alleged in the indictment. The Supreme Court held this affidavit to be a sufficient basis for extradiction, in the absence of any other explanation of the facts. In so doing, the Court dismissed the relator's objection, largely based on the Hyatt case, as "technical." 196 U.S. at page 373, 25 S.Ct. 282, 49 L.Ed. 515.