BARKETT, Justice.
We have for review Josey v. Galloway, 482 So.2d 376 (Fla. 1st DCA 1985), certified as in conflict with Brunelle v. Norvell, 433 So.2d 19 (Fla. 4th DCA 1983). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
We are asked to determine the burden of proof a respondent must bear to overcome an existing presumption that he is a fugitive from justice and therefore subject to extradition. We conclude that when a warrant is based upon a facially valid probable cause hearing in the foreign state, the accused may only defeat extradition as to this issue by producing clear and convincing proof that he is not a fugitive from justice.
On January 31, 1984, an Alabama grand. jury returned the indictment in this case charging that:
Jimmy D. Josey, whose name is to the Grand Jury otherwise unknown, did knowingly obtain or exert unauthorized control over ten tons of nitrogen fertilizer, the property of Don Johnson, of the value of, to wit: $1500, with the intent to deprive the owner of said property, in violation of 13A-8-3 of the Code of Alabama.
482 So.2d at 380 (footnote omitted). Based on these charges, Alabama authorities issued a writ of arrest.
The District Attorney for the Twentieth Judicial Circuit of Alabama then filed a sworn application asking the governor of Alabama to seek Josey’s extradition. In pertinent part, this petition alleged that Josey had been charged with second-degree theft, had been present in Alabama at the time of the crime, and currently was a fugitive from justice in Florida. The governor of Alabama issued a demand for extradition to the governor of Florida, attaching copies of the indictment and the writ of arrest. Honoring this request, the governor of Florida issued a warrant.
After his arrest in Florida, Josey filed a petition for writ of habeas corpus. 'He challenged the allegation that he was a fugitive from justice and argued that he was present in Florida the entire day of the alleged theft.
At the hearing on Josey’s petition, the state introduced the Alabama indictment and writ of arrest, the Alabama district attorney’s application, and the Florida warrant, and rested its case. Josey responded to the charges by calling seven witnesses, including himself and his wife, who testified that he was not in Alabama the day of the theft. The evidence reflected that Jo-sey had been a sales representative for Golden Plant Food Company, a fertilizer *592 manufacturer in Henry County, Alabama. On his own behalf, Josey testified that he had not been in or near Headland, Alabama, site of the theft, since attending a meeting with Golden Plant Food representatives sometime between March and May 1983. An eyewitness to the theft testified that it occurred on October 16, 1983. At that time, individuals purporting to be Golden Plant Food Company employees loaded fertilizer belonging to Don Johnson and drove away. This eyewitness said that he knew Josey and that Josey “was not one of the individuals there with the truck loading the fertilizer.” Four witnesses testified that they saw Josey in Bonifay, Florida, during various times of the day on October 16, 1983. Both Josey and his wife testified that he was in Bonifay the entire day.
After argument, the trial court denied Josey’s petition for habeas corpus, finding that “there was no legal reason that would bar Alabama authorities from returning Jimmy Josey to that state to answer criminal charges named in the governor’s rendition warrant.” Josey obtained review in the First District Court of Appeal, which remanded for legally sufficient findings of fact:
Since the trial court did not find that appellant failed to meet his burden of proof, but stated simply that “no legal reason” existed for denying his return to Alabama, it appears the court may have denied the writ as a matter of law.
482 So.2d at 382-83.
The First District below noted conflict with Brunette based on the latter’s assertion that extradition is mandatory when the accused’s evidence “does no more than create a conflict” with the state’s evidence. 433 So.2d at 20. Interpreting this language to mean that any evidentiary conflict requires extradition, the First District rejected the reasoning of Brunette and found that an accused must be afforded some meaningful opportunity to defeat the presumption that he is a fugitive.
We agree with the First District’s reasoning, but decline to read Brunette so narrowly. To do so would render meaningless the guarantee of a habeas corpus hearing and the accompanying right to present evidence against the warrant under Florida’s Uniform Interstate Extradition Act, sections 941.01-941.42, Florida Statutes (1985), as well as under the decisions of the United States Supreme Court. See Michigan v. Doran, 439 U.S. 282, 288-89, 99 S.Ct. 530, 535, 58 L.Ed.2d 521 (1978).
In Doran, the Court held that interstate extradition is a summary and mandatory executive proceeding and ruled that a facially valid extradition warrant issued by the governor may not be challenged solely on the basis of a purported lack of probable cause. 439 U.S. at 290, 99 S.Ct. at 536. However, Doran recognized four permissible challenges:
(a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive.
Doran, 439 U.S. at 289, 99 S.Ct. at 535. Only the last of these factors is pertinent to the case at bar, and the focus of our inquiry is directed to the manner by which such a challenge can be sustained.
The principles governing this issue were enunciated by the United States Supreme Court in Illinois ex rel. McNichols v. Pease, 207 U.S. 100, 109, 28 S.Ct. 58, 61, 52 L.Ed. 121 (1907):
One arrested and held as a fugitive from justice is entitled, of right, upon habeas corpus, to question the lawfulness of his arrest and imprisonment, showing by competent evidence, as a ground for his release, that he was not, within the meaning of the Constitution and laws of the United States, a fugitive from the justice of the demanding state, and thereby overcoming the presumption to the contrary arising from the face of an extradition warrant.
In McNichols, the accused contended he was in a different state on the day of the crime, but could only account for his presence there during a few hours of the afternoon. The warrant did not limit the time *593 of the crime to the afternoon hours, and the crime occurred approximately one to one and one-half hours from the place the defendant purported to be. Based on these scant facts, the McNichols court found that the accused had not defeated the presumption that he was a fugitive from justice.
In South Carolina v. Bailey, 289 U.S. 412, 53 S.Ct. 667, 77 L.Ed. 1292 (1933), the Supreme Court again spoke on the issue, using the language later adopted by the Fourth District in Brunelle. The Court in mid-thought stated:
"... [T]he court will not discharge a defendant arrested under the governor’s warrant where there is merely contradictory evidence on the subject of presence in or absence from the State, as habeas corpus is not the proper proceeding to try the question of alibi, or any question as to the guilt or innocence of the accused.”
289 U.S. at 421, 53 S.Ct. at 671 (quoting Munsey v. Clough, 196 U.S. 364, 374, 25 S.Ct. 282, 286, 49 L.Ed. 515 (1905)). In the same pen stroke, the Court echoed the language of McNichols and reaffirmed the right of a defendant to challenge the presumption that he is a fugitive from justice:
“When a person is held in custody as a fugitive from justice under an extradition warrant, in proper form, and showing upon its face all that is required by law to be shown as a prerequisite to its being issued, he should not be discharged from custody unless it is made clearly and satisfactorily to appear that he is not a fugitive from justice within the meaning of the Constitution and laws of the United States.”
289 U.S. at 421, 53 S.Ct. at 671 (emphasis added). The Bailey court then applied this principle to its case:
[W]e may not properly approve the discharge of the respondent unless it appears from the record that he succeeded in showing by clear and satisfactory evidence that he was outside the limits of South Carolina at the time of the homicide.
289 U.S. at 421-22, 53 S.Ct. at 671 (emphasis added). The Court then rephrased the principle:
Stated otherwise, he should not have been released unless it appeared beyond reasonable doubt that he was without' the State of South Carolina when the alleged offense was committed and, consequently, could not be a fugitive from her justice.
289 U.S. at 422, 53 S.Ct. at 671 (emphasis added). Despite the use of somewhat inconsistent language, the Bailey court plainly held that the presumption arising from the governor’s warrant can be defeated by clear and convincing evidence that the accused was not in the jurisdiction where and when the crime occurred. See also Walton v. State, 98 Idaho 442, 566 P.2d 765 (1977). As the Second District correctly observed in State v. Cox, 306 So.2d 156, 159 (Fla. 2d DCA 1974):
The question of whether an accused is a fugitive from justice asks nothing more than whether he was bodily present in the demanding state at the time of the offense and thereafter departed from that state.
Partly because of the language in Bailey, the Florida courts have shown considerable confusion in their approach to this issue. Under facts similar to those of the present case, the Third District in State v. Davila, 481 So.2d 486, 492 (Fla. 3d DCA 1986) (on rehearing), held that a petitioner cannot defeat the governor’s warrant if the evidence “does no more than create a conflict ... on the question of his whereabouts [during the crime].” Earlier, that same court in State v. Scoratow, 456 So.2d 922, 923 (Fla. 3d DCA 1984), had held that the burden is on the accused to “ ‘overthrow conclusively the presumption against him’ ” (quoting State ex rel. Kimbro v. Starr, 65 So.2d 67, 68 (Fla.1953)); but the Scoratow court went on to say that “merely contradictory evidence on the issue of the accused’s presence in or absence from the demanding state” will not defeat the warrant. 456 So.2d at 923. Our own prior holding in Kimbro may have added to the confusion by noting that a court’s “plain *594 duty” is to deny habeas corpus relief where the evidence “is in direct conflict.” 65 So.2d at 69. Based on our reading of Bailey and the Florida Uniform Interstate Extradition Act, we find that conflict of evidence is not the appropriate standard for testing a petitioner’s challenge. The sole question is whether the petitioner has defeated the presumption of validity with clear and convincing proof he was not in the demanding jurisdiction when the crime occurred.
We next turn to a related eviden-tiary issue addressed by the court below. Based on its reading of pertinent case law, the First District concluded that the state cannot meet its burden of proof merely by submitting affidavits not based on firsthand knowledge. 482 So.2d at 385. This holding, while essentially correct, requires clarification. We agree with the First District that affidavits not based on first-hand knowledge carry little evidentiary value, either in the state’s or the petitioner’s case. However, other than to prove that the petitioner is the same person named in the original charges, the quality of the state’s proof becomes an issue only if the petitioner comes forward with clear and convincing evidence that he is not a fugitive. The burden then shifts to the state to produce competent evidence discrediting the petitioner’s proof to such a degree that it ceases to be clear and convincing. While the court may receive any evidence it deems proper, affidavits and other hearsay not based on first-hand knowledge, without more, are insufficient to meet the state’s burden on this issue. We hasten to note, however, that the evidentiary value of any extradition paper has no effect on the presumption that the petitioner is a fugitive, which arises immediately upon issuance of a valid warrant.
Adhering to these core principles, the First District remanded the present action to the trial judge to weigh its evidence under the appropriate legal standard. We concur and cite with approval a pertinent analysis by the Supreme Court of Idaho:
If a petitioner presents no evidence, the presumption operates to mandate the extradition. If a petitioner does present evidence, the trial court must decide whether the petitioner has established by clear and convincing evidence that he was absent from the demanding state at the time of the offense. The state, at its option, may present evidence or not. If [the state] chooses to submit additional affidavits, the court must view all evidence presented and determine whether, on balance, the petitioner has carried his burden.... If, on the other hand, no evidence is presented by the state, and the court is faced with uncontroverted evidence from the defendant, it must evaluate that evidence alone to determine whether the petitioner has carried his burden by clear and convincing proof.
Walton v. State, 98 Idaho 442, 445, 566 P.2d 765, 768 (1977). Our sister court further explained that
uncontroverted evidence from the petitioner does not automatically mean that the petitioner has met this burden, for the court might disbelieve the credibility of the witnesses. If the trial court views all the evidence and determines that the presumption was not overturned, then it is not necessary for the state to go forward with evidence.
Id. at 445, 566 P.2d at 768.
We find that the Idaho court’s analysis correctly states the law pertaining to this issue. The presumption and procedure outlined above are founded, on one hand, in our obligation under the constitution and its supremacy clause to ensure the integrity of the extradition process. Florida may not provide sanctuary to those fleeing justice in her sister states, thereby turning this nation’s criminal justice system into a game whose outcome rests largely on whether the accused can cross a border. See Doran, 439 U.S. at 287, 99 S.Ct. at 534. On the other hand, the constitution forbids a state from exercising its extradition powers based on false accusations, simple ignorance of the law or wanton abuse of process. Every state has an equal obligation to see that no such attempt is successful and, simultaneously, that any corrective measures it takes will preserve the consti *595 tutional policy underlying extradition. Id. at 288, 99 S.Ct. at 534.
Accordingly, we approve the district court’s opinion and its action in remanding the matter to the trial court for further proceedings consistent herewith.
It is so ordered.
OVERTON and SHAW, JJ., and ADKINS, J. (Ret.), concur.
McDonald, C.J. and EHRLICH, J., dissent.