## AUDLER *v.* KRISS

[No. 103, October Term, 1950.]

*Decided March 15, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Joel J. Hochman,* with whom was *Hyman C. Ullman* on the brief, for appellant.

*Kenneth C. Proctor, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General, J. Bernard Wells, State's Attorney for Baltimore City,* and *James F. Price, Assistant State's Attorney,* on the brief, for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This *habeas corpus* proceeding was brought in the Baltimore City Court by Roy M. Audler, who was charged with a crime in the State of Virginia and was held under a warrant of rendition issued by the Governor of Maryland upon an extradition warrant issued by the Governor of Virginia.

Petitioner was indicted by the Grand Jury of Halifax County, Virginia, in March, 1950, for breaking and entering the store and office of E. J. Wyatt, trading as

Wyatt Chevrolet, in the nighttime on January 21, 1950, and stealing $900 therefrom. An extradition hearing was held in Annapolis on May 15, 1950, before a Special Assistant Attorney General, and Governor Lane issued a warrant for the delivery of the accused to the State of Virginia. The accused thereupon applied for a writ of *habeas corpus*, alleging that he was unlawfully deprived of his liberty by Henry J. Kriss, Captain of Detectives of Baltimore. Petitioner claimed that he was not in Halifax County on January 21, when the crime was committed, and therefore was not a fugitive from justice. Judge France, finding no reason to justify the release of petitioner, remanded him to the custody of the Warden of the Baltimore City Jail pending the result of an appeal to the Court of Appeals.

It has long been established that the Governor cannot lawfully comply with a requisition for extradition, unless it appears (1) that the person demanded is substantially charged with a crime against the laws of the demanding State by an indictment or affidavit properly certified, and (2) that he is a fugitive from the justice of that State. *Roberts v. Reilly*, 116 U. S. 80, 6 S. Ct. 291, 299, 29 L. Ed. 544; *Appleyard v. Massachusetts*, 203 U. S. 222, 27 S. Ct. 122, 124, 51 L. Ed. 161 The first prerequisite is a question of law, and the second is a question of fact. It is also established that an extradition requisition reciting that the accused was charged with a certain crime against the laws of the State, and had become a fugitive from the justice of the State, accompanied by a certified copy of the indictment or affidavit, makes a *prima facie* case against the accused as an alleged fugitive from justice, and the warrant issued by the Governor of the asylum State is *prima facie* sufficient to justify the arrest of the alleged fugitive and his delivery to the agent of the demanding State. However, the person arrested in the extradition proceeding may show that he was not in the demanding State at the time the crime was committed. The person held for extradition upon the Governor's warrant has the burden of proof on *habeas corpus* to

show that he was not in the demanding State at the time of the crime in order to overcome the presumption raised by such warrant. *Hyatt v. People of State of New York ex rel. Corkran,* 188 U. S. 691, 23 S. Ct. 456, 47 L. Ed. 657; *Marbles v. Creecy,* 215 U. S. 63, 30 S. Ct. 32, 54 L. Ed. 92.

The Uniform Criminal Extradition Act, which was adopted by the Legislature of Maryland in 1937, provides that no person arrested upon the Governor's warrant of arrest shall be delivered over to the agent whom the Executive Authority demanding him shall have appointed to receive him unless he shall be first taken forthwith before a judge of a court of record in this State, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure legal counsel. The Act further provides that if the prisoner or his counsel shall state that he or they desire to test the legality of his arrest, the judge shall fix a reasonable time to be allowed him within which to apply for a writ of *habeas corpus.* Laws of 1937, ch. 179, Code 1939, art. 41, sec. 22.

In the case now before the Court there was no attack upon the sufficiency of the requisition warrant. Petitioner conceded that he was substantially charged with a crime against the laws of Virginia. It was contended that he was not a fugitive from the justice of Virginia. The question of fact to be tried on *habeas corpus* is not whether the accused is guilty or innocent of the charge brought against him in the demanding State, but whether he is properly held in the asylum State under the Governor's warrant by virtue of Article 4, Section 2, of the Constitution of the United States and the Act of Congress, 18 U. S. C. A. § 3182, passed in furtherance thereof. *Appleyard v. Massachusetts,* 203 U. S. 222, 27 S. Ct. 122, 51 L. Ed. 161; *Biddinger v. Commissioner of Police of City of New York,* 245 U. S. 128, 38 S. Ct. 41, 43, 62 L. Ed. 193. Hence, the specific question to be determined

from the evidence in this case was whether or not petitioner was in Halifax County at the time of the burglary.

Petitioner testified in the Court below that he was in Baltimore on Saturday, January 21, 1950, and helped to celebrate the 23rd birthday of his girl friend, Winifred Teague. A complete narrative of their movements was given by petitioner, supported by Miss Teague, who said that her birthday was on Friday, but since her sister had a party for her on Friday, she celebrated with petitioner on Saturday. Petitioner said that he met Miss Teague at the Johns Hopkins Hospital, where she was employed, at about 1 o'clock in the afternoon, and drove her to her home, where he stayed about two hours; then went home and dressed; met her again about 7:30 o'clock and drove her out Charles Street; then went to a restaurant; and about 9:30 o'clock went to the Spa, a cocktail bar on North Charles Street, where they stayed about an hour; then went to Bechelli's Restaurant on Preston Street, where they had a sandwich; walked down Charles Street and stopped at the Riviera Restaurant for a few minutes; then went to the Village Bar on Harrison Street, where they saw a friend named Joseph Munafo, Jr., and stayed until about 11:30 o'clock; then took his girl friend home, leaving her about 1:45 o'clock Sunday morning; then went riding with Munafo and had hamburgers and potatoes at the Toodle House; and went home about 3:30 o'clock in the morning. To substantiate his story, petitioner also called to the stand Munafo and a bartender at one of the places he claimed he visited on the night of January 21. Petitioner swore that he did not leave Baltimore until Monday, January 23, and stopped in South Boston, Virginia, about an hour that afternoon on the way to New Orleans.

Respondent, challenging petitioner's alibi, produced two witnesses from Virginia, who testified that they saw petitioner near South Boston on January 21. Jack G. Pearson, a mill worker, testified that petitioner came to his home about a quarter of a mile from South Boston about 5 o'clock that afternoon. Hilda L. Langford,

also a mill worker, testified that she was visiting in Pearson's home on January 21 and saw petitioner when he came there.

Respondent also called Lieut. Frank Schmidt, Detective at Police Headquarters, who testified as to his conversation with petitioner immediately after his arrest. The officer testified that he told petitioner that he was wanted in South Boston for burglary, and that he showed him a letter from the Chief of Police. The officer then testified that petitioner admitted that he left Baltimore on January 20 and was in South Boston on January 21, but denied that he had committed the burglary. Objection was made to this testimony on the ground that petitioner should not have been questioned about the charge in the absence of his attorney. Petitioner claimed that upon his return to Baltimore from New Orleans, he went to the law office of Joel J. Hochman, his attorney, and while there Lieut. Schmidt phoned that he wanted to talk with him about some tickets for parking violations. Petitioner asked him: "Do you want me to bring Mr. Hochman down with me?" The officer replied: "I don't see where it is necessary to have a lawyer. I only want to talk to you." Petitioner then started toward headquarters, but was arrested by another officer before he entered the building.

It was argued that the admission of this testimony violated the provision of Article 21 of the Maryland Declaration of Rights that in all criminal prosecutions every man has a right "to be allowed counsel." We have pointed out that this constitutional provision was intended to stamp out the original rule in England that a prisoner was not permitted to be heard by counsel on the general issue of not guilty on any indictment for treason or felony. It was not designed to compel the State to provide counsel for the accused. *Raymond v. State ex rel. Szydlouski*, 192 Md. 602, 607-8, 65 A. 2d 285, 287. The mere fact that an accused makes a confession while in the custody of a police officer before he consults counsel does not render his confession in-

admissible. *Cox v. State,* 192 Md. 525, 537, 64 A. 2d 732, 737. The failure to have counsel present, even where the accused is not permitted to consult counsel, is not sufficient to deny admission of a confession, if the confession was given voluntarily. *Day v. State,* 196 Md. 384, 397, 76 A. 2d 729, 735. We, therefore, find no merit in the contention that the admission of the officer's testimony violated Article 21 of the Declaration of Rights.

Lieut. Schmidt, who had known petitioner for some time, also testified that he did not see him at any time on the evening of January 21, although he was on duty at Charles and Preston Streets from 7:30 o'clock until midnight and checked the Spa Bar five times, and also checked the poolrooms and other places where he frequently visited.

It was urged by petitioner that the testimony of his three witnesses was stronger than the testimony of respondent's three witnesses. It is unquestionably true that an accused held under an extradition warrant should be discharged on *habeas corpus* where it is so conclusively proved that he was not in the demanding State when the crime was alleged to have been committed that there can be no reasonable doubt that he was not in the demanding State at that time. *Hyatt v. People of State of New York ex rel. Corkran,* 188 U. S. 691, 23 S. Ct. 456, 47 L. Ed. 657; *State of South Carolina v. Bailey,* 289 U. S. 412, 53 S. Ct. 667, 77 L. Ed. 1292. But if the extradition warrant is in proper form, the alleged fugitive should not be discharged from custody unless it is shown by conclusive evidence that he was not in the demanding State at the time the crime was committed. The Governor's finding that the person whose extradition is demanded is a fugitive from justice must stand unless it is clearly overthrown. The accused should not be discharged where the evidence on the subject of his presence in or absence from the demanding State is merely contradictory. *Munsey v. Clough,* 196 U. S. 364, 25 S. Ct. 282, 49 L. Ed. 515; *People of State of Illinois ex rel. McNichols v. Pease,* 207 U. S. 100, 28 S. Ct. 58, 52

L. Ed. 121; *Hogan v. O'Neill*, 255 U. S. 52, 41 S. Ct. 222, 65 L. Ed. 497; *People ex rel Gottschalk v. Brown*, 237 N. Y. 483, 143 N. E. 653, 32 A. L. R. 1164; *State ex rel. Zack v. Kriss*, 195 Md. 559, 74 A. 2d 25.

In the present case each side produced three witnesses. The record presents an irreconcilable conflict of testimony. It is unnecessary for us to determine which set of witnesses is the more credible, or whether the story advanced by one side is slightly more convincing than the other. It is sufficient to say that petitioner failed to show beyond a reasonable doubt that he was not in Halifax County at the time of the commission of the crime, and therefore he failed to overcome the presumption raised by the extradition proceeding that he is a fugitive from justice. The order appealed from must therefore be affirmed.

*Order affirmed, with costs.*