Philip A. **COHEN,** Petitioner,

v.

**WARDEN, MONTGOMERY COUNTY DETENTION CENTER, ROCKVILLE, MARYLAND,** Respondent.

**Civ. No. 17111.**

United States District Court
D. Maryland.

April 19, 1966.

Fred E. Weisgal, Baltimore, Md., and Robert C. Heeney, Rockville, Md., for petitioner.

Thomas B. Finan, Atty. Gen. of Maryland, and Morton A. Sacks and Donald Needle, Asst. Attys. Gen., Baltimore, Md., for respondent.

THOMSEN, Chief Judge.

Petitioner is now in the custody of the Warden of the Montgomery County Detention Center at Rockville, Maryland, (1) under indictment awaiting trial in the Circuit Court for Montgomery County on a charge of attempted burglary, and (2) subject to a rendition warrant issued by the Governor of Maryland, after an extradition hearing, directing that petioner be turned over to Virginia authorities to answer a charge of burglary in that State. He has filed a petition for a writ of habeas corpus in this Court, contending that he was denied due process of law under the Fourteenth Amendment because the Court of Appeals of Maryland refused to appoint counsel to represent him or to pay for the costs of his brief on appeal from an order of the Circuit Court for Montgomery County denying him relief after a hearing in a habeas corpus proceeding challenging the rendition warrant.

Upon the filing of the petition herein, this Court issued a writ of habeas corpus, and granted a hearing to petitioner, who was represented by two counsel of his own choosing, Fred E. Weisgal, Esq., and Robert C. Heeney, Esq. The record of the proceedings in the Circuit Court and other documentary evidence was offered in evidence, and the case was fully argued. There is no substantial dispute about any of the facts stated below. Indeed, most of them have been stipulated.

### Facts

Some time before February 4, 1965, the Wheaton-Glenmont Police Station in Montgomery County had received a teletype indicating that a white man, whose description generally fitted petitioner, was wanted for burglary, rape and molestation in Arlington, Virginia, and in Montgomery County and the Baltimore area. On February 4 the Montgomery County police answered a call reporting an attempted break-in near Wheaton, in the vicinity of 3115 University Boulevard West, Apartment U–1, Silver Spring, Maryland, and found petitioner on the property, about 10 ft. from the door and 500 ft. from the public road. He was identified by the occupant, who had reported the attempt, and was arrested without a warrant. He was taken to Wheaton-Glenmont Police Station, where he was formally charged with an attempted burglary of the above premises. About 12:30 p. m., on February 5, an arrest warrant calling for petitioner's arrest on the attempted burglary charge was issued by Justice of the Peace Edward C. Feakes, pursuant to an affidavit made by Officer John Queen, one of the Montgomery County policemen who had made the arrest.

Later that day Detective Lieutenant Norman Grimm of the Alexandria Police Station, Alexandria, Virginia, arrived at the Wheaton-Glenmont Police Station with a Virginia warrant calling for petitioner's arrest on a charge of burglary, alleged to have occurred in Alexandria, Virginia, on January 5, 1965. Thereafter, a fugitive warrant was issued by Justice Feakes, charging petitioner with the Alexandria, Virginia, burglary.

On the same day, February 5, Detective Sergeant Kadel of the Arlington County Police Department, arrived at the Wheaton-Glenmont Police Station, accompanied by the alleged victim of a rape and robbery in Arlington, Virginia, on November 3, 1964, and a fugitive warrant was signed by Justice Feakes, charging the petitioner with the Arlington, Virginia, rape and robbery.

After having been advised by Justice Feakes of his rights with respect to the fugitive warrants, petitioner refused to sign waivers of extradition thereon; and on the same day, February 5, bail was set by Justice Feakes in the amount of $20,000 on each of the three charges.

On February 15, petitioner was brought before Judge H. Ralph Miller of the People's Court of Montgomery County for a preliminary hearing on the

attempted burglary charge in Montgomery County. He was represented by Jack Levin, Esq. Petitioner thereupon waived the preliminary hearing and was bound over for grand jury action. On March 3, the Montgomery County Grand Jury returned Indictment No. 6762, charging petitioner with the attempted burglary.

On March 17, 1965, Robert C. Heeney, Esq., an experienced criminal lawyer,was appointed by Chief Judge Anderson of the Circuit Court for Montgomery County to represent petitioner in that case. On March 18, 1965, pleas of not guilty and not guilty by reason of insanity were filed by Mr. Heeney on behalf of the petitioner.

On March 29, pursuant to a request by the State of Maryland, a continuation of the Alexandria fugitive warrant to May 4 was granted by the Court. On April 2, on the authority of an order of Court, petitioner was transferred to the Clifton T. Perkins State Hospital for examination and evaluation under his plea of not guilty by reason of insanity.

On May 27, while petitioner was still in the hospital, Governor Harrison of Virginia forwarded formal extradition papers to Governor Tawes of Maryland, requesting petitioner's extradition on the Alexandria charge.

On June 21, Dr. John M. Hamilton, Superintendent of the Clifton T. Perkins State Hospital, filed the Institution's evaluation report, which concluded that petitioner did not meet the Maryland test of criminal responsibility on the night of February 4, although he was deemed competent to stand trial on the date of the filing of the report. In a progress note dated June 15, attached to the report, the concluding sentence read: " * * * I think that it should be clear that, in my opinion, this psychotic decompensation probably began to occur shortly before the night of February 4th and is, therefore only valid for that offense."

On June 23, Mr. Heeney, on behalf of the petitioner, filed a motion for a speedy trial on the Montgomery County indictment.

On June 24, an extradition hearing was held in Annapolis, Maryland, at which petitioner was present and was represented by Mr. Heeney as his privately retained counsel. After the hearing, a rendition warrant, calling for petitioner's return to Virginia, was executed by Governor Tawes.

On the same day, June 24, petitioner, again represented by Mr. Heeney, filed a petition for a writ of habeas corpus in the Circuit Court for Montgomery County, in which he contended that he was being illegally detained, without specifying any ground.

On June 20, a nolle prosequi was entered by the State of Maryland on Indictment No. 6762.

On July 7, a hearing on the habeas corpus petition, which was intended to test the extradition order, was held before Judge Ralph B. Shure, at which petitioner was again represented by Mr. Heeney. Petitioner appeared and testified, as did a number of witnesses called by the State. The points raised by petitioner were (1) illegal arrest, (2) delay in the extradition proceedings, and (3) absence from Virginia at the time of the alleged crime. Judge Shure decided against petitioner on all three points, for reasons which will be discussed below, and directed that petitioner be returned to Virginia in accordance with the executive order of the Governor of Maryland.

On July 8, petitioner, through Mr. Heeney, who was still privately retained, filed an appeal from Judge Shure's denial of habeas corpus relief, as permitted by Article 41, section 25 of the Maryland Code.

Subsequently, Mr. Heeney was appointed by Judge Anderson to prosecute petitioner's appeal from the denial of habeas corpus relief. The record was prepared and forwarded and Mr. Heeney advanced the $20 filing fee on October 6. On the same day, the Circuit Court entered an order "that all court costs including, but not limited to, all clerks' fees, the cost

of preparing the transcript of testimony, the cost of preparing and transmitting the record, and the costs of the briefs, appendices and printed record extract necessary in connection with this appeal shall be paid by the State of Maryland, and that the record be transmitted to the Court of Appeals at the expense of the State." Despite that order, Mr. Heeney wrote the Chief Deputy Clerk of the Court of Appeals, asking for a clarification of his status, and requesting either a hearing on his right to be paid or relief from further responsibility. The Clerk replied as follows:

"The Court has considered your letter enclosing an order of the Circuit Court for Montgomery County. The Court has requested me to notify you that they do not know of any authority by statute or rule which would allow the courts to authorize payment of costs of briefs, etc. by the State in appeals from a civil proceeding.

"The appeal has, therefore, been docketed as a paid case, and it is suggested that you may wish to take this matter up with Judge Anderson."

On October 27, 1965, Mr. Heeney filed a petition to be removed as counsel in the Court of Appeals. A few days later, the Court of Appeals entered the following order:

"Upon consideration of the Petition of Robert C. Heeney to be relieved as counsel and it appearing to the satisfaction of the Court that there is no authority by statute or rule which would allow the Circuit Court for Montgomery County to appoint counsel in this case, or to authorize the payments of costs of briefs and transcripts, that Robert C. Heeney's name be stricken as counsel for the appellant."

No further action was taken on the appeal by anyone until February 16, 1966, when petitioner, through Fred E. Weisgal, Esq., as his attorney, filed a motion for

the appointment of counsel and payment of costs. On February 19 the State filed a motion to dismiss the appeal for failure to submit a timely brief. On March 1 petitioner's motion was denied and the State's motion to dismiss the appeal was granted.

Meanwhile, a new indictment had been filed in Montgomery County, based on the incident of February 4, 1965, which corrected an error in the earlier indictment, pleas of not guilty and not guilty by reason of insanity had been filed, and petitioner had again been sent to the hospital, this time for treatment. He was ordered returned to Montgomery County on March 3, 1966, the same day the petition for a writ of habeas corpus was filed in this Court by Mr. Heeney and Mr. Weisgal as attorneys for petitioner.

On March 17, petitioner, by Mr. Heeney, filed a motion for a speedy trial on Montgomery County Indictment No. 7387.

## Discussion

■■ A petitioner must exhaust his state remedies before applying to a federal court for a writ of habeas corpus challenging extradition proceedings. Tickle v. Summers, 4 Cir., 270 F.2d 848, (1959). Petitioner in this case has done so; his appeal was dismissed by the Court of Appeals of Maryland because of his financial inability to file the required briefs. See Daugharty v. Gladden, 9 Cir., 257 F.2d 750, 755, and cases cited.

Petitioner's attorneys concede that a state is not required by the Fourteenth Amendment to permit an appeal from the denial of relief in habeas corpus proceedings challenging an extradition order, but they contend that, having provided for such appeal,[1] the state must provide counsel and briefs for an indigent appellant. They argue that the habeas corpus proceeding is a stage in the criminal proceeding or is analogous thereto.[2] The

---

1. Article 41, section 25, of the Annotated Code of Maryland, 1957 ed., 1965 replacement volume.

2. Citing Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Hamilton v. State of Alabama, 368 U.S.

Attorney General argues that habeas corpus is a civil proceeding, in which the State is not required to provide counsel or costs for the petitioner, in the trial court or on appeal.

It is true that many cases have held that habeas corpus is a civil proceeding, and that an indigent petitioner has no constitutional right to have counsel appointed to represent him therein. Most of those cases, however, arose after the conviction had become final.[3] In Smith v. Bennett, 365 U.S. 708 at p. 712, 81 S. Ct. 895 at p. 897, 6 L.Ed.2d 39 (1961), the Supreme Court said: "While habeas corpus may, of course, be found to be a civil action for procedural purposes, Ex parte Tom Tong, 108 U.S. 556 [2 S.Ct. 871, 27 L.Ed. 826] (1883), it does not follow that its availability in testing the State's right to detain an indigent prisoner may be subject to the payment of a filing fee." In Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1965), the Court applied the doctrine of Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), to a case involving an appeal from a writ of error *coram nobis* after a conviction had become final and certiorari had been de-

nied. A number of opinions have analogized various types of extradition and removal proceedings to preliminary hearings in criminal cases, for various purposes.[4]

Only one case has been cited or found directly in point on the question whether a petitioner is entitled to counsel on an appeal from an order in a habeas corpus case filed to test the validity of an extradition order. Application of Oppenheimer, 95 Ariz. 292, 389 P.2d 696 (1964), cert. den. Oppenheimer v. Boies, 377 U.S. 948, 84 S.Ct. 1359, 12 L.Ed.2d 311, a most unusual case, held that there was no such right.[5] It has also been held that there is no right to have counsel appointed to represent the fugitive at an extradition hearing. Bagley v. State of Maryland, D.Md., Winter, J., Civil Action 16518 (1965), appeal dismissed as frivolous, 4 Cir., No. 10268 (1966); Bagley v. Warden, Criminal Court of Baltimore City, Foster, J., Daily Record, February 19, 1964; Rugg v. Burr, 1 Ariz.App. 280, 402 P.2d 28 (1965).[6]

■■ The points that may be raised in such a habeas corpus proceeding are narrow.[7] The Supreme Court has re-

52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961); White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963). Cf. DeToro v. Pepersack, 4 Cir., 332 F. 2d 341 (1964).

3. See, e. g., United States ex rel. Wissenfeld v. Wilkins, 2 Cir., 281 F.2d 707 (1960); Dorsey v. Gill, 80 U.S.App.D.C. 9, 148 F.2d 857 (1945); Barker v. State of Ohio, 6 Cir., 330 F.2d 594 (1964); Noble v. Sigler, 8 Cir., 351 F.2d 673 (1965). Cf. Dillon v. United States, 9 Cir., 307 F.2d 445, where the Court indicated that a petitioner under 28 U.S.C.A. § 2255 may have a Fifth Amendment right to counsel if he could not possibly have a meaningful proceeding without counsel. The authorities generally agree that counsel should be appointed in difficult cases.

4. Charlton v. Kelly, 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274 (1913); Collins v. Loisel, 262 U.S. 426, 43 S.Ct. 618, 67 L. Ed. 1062 (1923); Morse v. United States, 267 U.S. 80, 45 S.Ct. 209, 69 L.Ed. 522 (1925). See also Bagley v. State of Maryland, D.Md., Winter, J., Civil Ac-

tion 16518 (1965), 4 Cir., No. 10268 (1966); Bagley v. Warden, Criminal Court of Baltimore, Foster, J., Daily Record, February 19, 1964.

5. The Court relied on United States ex rel. Wissenfeld v. Wilkins, 2 Cir., 281 F.2d 707 (1960), a post conviction habeas corpus case.

6. None of those opinions discusses the provision in the Uniform Extradition Act that a petitioner has the right to demand and procure legal counsel. Section 10 of the Uniform Extradition Act; Article 41, section 25, of the Annotated Code of Maryland; section 13-1310 of the Arizona Revised Statutes.

7. State of South Carolina v. Bailey, 289 U.S. 412, 53 S.Ct. 667, 77 L.Ed. 1292 (1933); Biddinger v. Commissioner of Police, 245 U.S. 128, 38 S.Ct. 41, 62 L.Ed. 193 (1917); Appleyard v. State of Massachusetts, 203 U.S. 222, 27 S.Ct. 122, 51 L.Ed. 161 (1906); Audler v. Kriss, 197 Md. 362, 79 A.2d 391 (1951); Koprivich v. Warden, 234 Md. 465, 200 A.2d 49 (1964).

peatedly held that Article IV, section 2, of the Constitution of the United States is intended to provide a summary executive proceeding whereby the States may promptly aid one another in bringing accused persons to trial, and that its provisions and the statutes passed in execution thereof should be construed liberally to effectuate that purpose. Biddinger v. Commissioner of Police, 245 U.S. 128, 38 S.Ct. 41, 62 L.Ed. 193 (1917); Appleyard v. State of Massachusetts, 203 U.S. 222, 27 S.Ct. 122, 51 L.Ed. 161 (1906). See also Sweeney v. Woodall, 344 U.S. 86, 73 S.Ct. 139, 97 L.Ed. 114 (1952). The Court has emphasized the importance of expediting the return of the fugitive and the interest of the demanding state. Public interest requires that the preliminary stages of a criminal proceeding be not unnecessarily prolonged and that a defendant be brought to trial promptly.

■ Nevertheless, applying by analogy the principles of Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961), and Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1965), discussed above, this Court concludes that an indigent is deprived of rights under the Fourteenth Amendment if he is denied an appeal under Article 41, section 25 of the Maryland Code, solely because he does not have money to pay for a brief. If the appellate court is able to determine from the record that the ap-

peal is patently frivolous, it may be dismissed, provided the State statutes or rules permit such action. The appeal involved in this case, however, was not dismissed for that reason.

■ The question of what relief should be granted by a federal district court in such a case is troublesome.[8] It is complicated by the interest of Virginia, which is not represented in the proceeding and should not have its rights foreclosed by the unwillingness of Maryland to provide costs and counsel in the habeas corpus proceedings. This Court concludes that in this case it should review the record from Montgomery County to see whether there is any merit in any of the points which petitioner sought to raise on appeal.[9] See Appleyard v. State of Massachusetts, 203 U.S. 222, 225–226, 27 S.Ct. 122.

■■ (1) The Arrest. At the hearing in the Circuit Court for Montgomery County, petitioner challenged the legality of his original arrest by the State officers for the alleged offense in Maryland. Judge Shure found the arrest proper,[10] and his decision was clearly supported by the evidence. Moreover, it appears from the authorities that even if petitioner's original arrest for the Maryland offense had been illegal, that would not have entitled him to relief in the habeas corpus proceeding challenging the extradition order. At the time he filed his habeas corpus proceeding, he was being

8. Petitioner is being held under the new Montgomery County indictment, as well as under the extradition order, so that until the Montgomery County indictment is disposed of, his petition is premature. Since, however, it appears likely that the Montgomery County indictment will be dismissed and both sides desire this Court to pass on the merits of the petition, it will not be dismissed as premature.

9. No additional evidence presented here affects any of those points.

10. Judge Shure said: " * * * on the night in question the police were called to the area where this accused was found. He was five hundred feet from the public road, or approximately that distance, standing on a landing on what was actual-

ly a private home in a development off University Boulevard. He was twelve feet from the front door of this apartment where the complaint was made when he was in fact arrested.

"The person who made the call to the police, one Stella Hoolack, testified that he was on the front porch. She said that she had seen four fingers inside of her home; and she said positively on the stand, and I quote her, 'That was the man I saw from my bedroom window'— referring to Philip Arthur Cohen.

"Probably she saw a felony being committed at that time. Certainly this information together with the information in the way of teletypes was sufficient for this arrest to be made."

held under a valid rendition warrant issued by the Governor of Maryland pursuant to a valid requisition issued by the Governor of Virginia. Stallings v. Splain, 253 U.S. 339, 40 S.Ct. 537, 64 L. Ed. 940 (1920); Willin v. Sheriff, 201 Md. 667, 95 A.2d 87 (1953); Travis v. People, 135 Colo. 141, 308 P.2d 997 (1957); People ex rel. Mack v. Meyering, 335 Ill. 456, 189 N.E. 494 (1934). Even if the original Maryland arrest had been invalid, he could properly have been arrested under the requisition or the rendition warrant.

■ (2) Petitioner challenges the delay between February 5, 1965, when the first Virginia warrants were sent to Montgomery County, and June 24, the date of the extradition order. The requisition warrant should have been forwarded by the Governor of Virginia within thirty days after February 5, unless the period were extended for an additional period of sixty days. Article 41, sections 28, 29, 31, Annotated Code of Maryland, 1957 ed., 1965 replacement volume. The requisition warrant was not sent to Maryland until May 27, and the extradition hearing was held on June 24, 1965. Judge Shure said:

> "In my judgment, any time between March 7th and May 27th this man could have been released if there had been an application made through habeas corpus, because after the 7th of March, which was thirty days [from February 5] * * * he could have been considered as being illegally detained * * *. However, all that was cured when the Governor on the 27th of May did send what is referred to as a requisition; and he called for a hearing and hearing was conducted. And so the extradition is legal and he is not now being unlawfully detained. * * * He will now have to be returned to Virginia in accordance with the executive order of the Governor."

This conclusion was clearly correct. Stallings v. Splain, 253 U.S. 339, 40 S. Ct. 537, 64 L.Ed. 940 (1920); Kelly v. Griffin, 241 U.S. 6, 36 S.Ct. 487, 60 L.Ed.

861 (1916); Willin v. Sheriff, 201 Md. 667, 95 A.2d 87 (1953).

■ (3) Finally, petitioner contends that he was not a fugitive from justice in Virginia. On this point Judge Shure followed Koprivich v. Warden, 234 Md. 465, 200 A.2d 49 (1964), in which the Court of Appeals said:

> "It is true, of course, that an accused held under an extradition warrant is entitled to a writ of *habeas corpus* to establish, if he can, that he is not a fugitive from justice. See the annotations in 51 A.L.R. 797, and 61 A. L.R. 715. See also Code (1957), Art. 41, § 25. But in a case such as this, where the extradition warrant is in proper form and the circumstances are such as to indicate that the alleged fugitive is the person wanted, he should not be discharged under the writ unless it is proved beyond a reasonable doubt that he was not in the demanding state at the time the crime was committed. Audler v. Kriss, 197 Md. 362, 79 A.2d 391 (1951). Moreover, an extradition hearing under a writ of *habeas corpus* is not a proceeding in which an alibi (or other question of fact affecting the guilt or innocence of the accused except insofar as his identity is involved) may be inquired into. Art. 41, § 34. Lincoln v. State, 199 Md. 194, 85 A.2d 765 (1952); Audler v. Kriss, supra.

> "We have consistently held that the findings by the chief executive of the asylum state that the person whose extradition is demanded is a fugitive from justice and the issuance of the warrant of rendition 'raises a presumption that the accused is the fugitive wanted, sufficient if unrebutted, to justify his arrest and detention and his delivery to the agent of the demanding State, unless he shows beyond a reasonable doubt that he was not a fugitive; if he does, he is entitled to his release.' State ex rel. Channell v. Murphy, 202 Md. 650, 651, 96 A.2d 473, 474 (1953), cert. den. 346 U.S. 824, 74 S.Ct. 40, 98 L.Ed. 349 (1953). Mere contradictory evidence on the question

of presence in or absence from the state demanding the accused is not sufficient to overcome the presumption. Mason and Slowe v. Warden of Baltimore City Jail, 203 Md. 659, 99 A.2d 739 (1953); State ex rel. Zack v. Kriss, 195 Md. 559, 74 A.2d 25 (1950); South Carolina v. Bailey, 289 U.S. 412, 53 S.Ct. 667, 77 L.Ed. 1292 (1933)."

In the instant case the only evidence offered by petitioner in the habeas corpus proceeding was his bald statement that he had not been in Virginia for a year before he was arrested. On the other hand, petitioner's counsel offered in evidence as an exhibit the requisition warrant and the accompanying affidavits challenging the sufficiency of those papers but not the truth of what was stated therein.[11] These papers included an affidavit of Norman E. Grimm that Philip Arthur Cohen in the nighttime broke and entered the dwelling house of Rita R. Votell, known as 3618 Philadelphia Drive, Alexandria, Virginia, with intent to commit rape therein, and that Philip Arthur Cohen was in the State at the time the aforesaid offense was committed. Under the established law of the Court of Appeals of Maryland and of the Supreme Court of the United States, Judge Shure was clearly correct in ruling that petitioner had not met the burden resting on him. See the Maryland cases cited in Koprivich v. Warden, supra; State of South Carolina v. Bailey, 289 U.S. 412, 53 S.Ct. 667, 77 L.Ed. 1292 (1933).

 It appears, therefore, that there is no merit in any of the points which petitioner sought to raise in the Court of Appeals of Maryland. That Court would undoubtedly have affirmed the appeal and might indeed have dismissed it as frivolous, as the Fourth Circuit frequently does in appeals from denial of habeas corpus relief by district courts.

11. The papers were sufficient. Article 41, section 18 of the Maryland Code, 1957 ed., 1965 replacement volume; Roberts v. Reilly, 116 U.S. 80, 6 S.Ct. 291, 29

This Court concludes, after having considered all the evidence and arguments advanced at the hearing in this Court in the instant case, that petitioner is not entitled to the relief prayed and that he should be remanded to the custody of respondent.

It is so ordered.

L.Ed. 544 (1885); Appleyard v. State of Massachusetts, 203 U.S. 222, at 228, 27 S.Ct. 122, 51 L.Ed. 161 (1906).