## LINCOLN *v.* STATE
[No. 81, October Term, 1951.]

pp. 198-202

*Decided January 16, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Henry A. Babcock,* with whom were *Green, Whalin, Babcock & Bell* on the brief, for appellant.

*Kenneth C. Proctor, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General,* and *Carlyle J. Lancaster, State's Attorney for Prince George's County,* on the brief, for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from an order dismissing appellant's petition for a writ of *habeas corpus* and remanding the appellant to the custody of Lt. J. Frank Cavanagh, of the Brockton, Massachusetts, police force for extradition to that State.

The appellant, Charles W. Lincoln, has been married to his wife, Anna K. Lincoln, for about thirty-five years. For ten years prior to September 1941 this couple lived with their six children in Brockton, Massachusetts. In September of 1941 the appellant left Massachusetts and went to work in Virginia, he said with the consent of his wife. After working in Virginia about six weeks, during which time he said he sent her money every week, he moved to Beltsville, Maryland. In 1947 he was arrested on a non-support warrant from Massachusetts and gave bond in the Circuit Court for Prince George's County, Maryland.

On the first Monday of October, 1947, the appellant was indicted by the grand jury of Plymouth County, Massachusetts, on an indictment containing three counts. The first count charged that Charles Lincoln of Beltsville, in Maryland, on September 15, 1941, "at Brockton in the County of Plymouth did abandon his wife, Anna Lincoln, leaving her in danger of becoming a burden upon the public." The second count charged that Charles Lincoln of Beltsville, in Maryland, on September 15, 1941, "at Brockton aforesaid did desert his wife, Anna Lincoln, by going into another city or state, leaving her without making reasonable provision for her support." The third count charged "that Charles Lincoln of Belts-

ville, in the State of Maryland, aforesaid during the four months next before the finding of this indictment at Brockton aforesaid being of sufficient ability, did unreasonably neglect to provide for the support of Anna Lincoln, his lawful wife."

On June 5, 1951, the Governor of Massachusetts issued to the Governor of Maryland a request for the extradition of Charles Lincoln "charged with the crime of Abandonment, Desertion and Nonsupport of Wife" who "has fled from the justice of this Commonwealth, and may have taken refuge in the State of Maryland." This request for extradition was accompanied by a petition to the Governor of Massachusetts for the requisition signed and sworn to by the "District Attorney for Plymouth District of said Commonwealth" in which it was alleged that Charles Lincoln was charged with the crime of "Abandonment, Desertion and Nonsupport of Wife committed in the County of Plymouth, during the four months next before October 6, 1947, and who, by his failure to provide support to said wife, did commit the crime aforesaid, even though not within the Commonwealth at the time of the commission of said crime, to which offense the Uniform Rendition Law is applicable, and I am informed said Charles Lincoln is within the jurisdiction of said State of Maryland." Also attached was an affidavit from the wife, Anna K. Lincoln, dated June 1, 1951, setting forth the charges in the indictment and also the following: "And I further depose that my husband, Charles Lincoln, left our home, 24 Thompson Avenue, Brockton, Massachusetts, on or about September 15, 1941. Shortly thereafter I learned he was in Virginia and later went to Maryland, where he obtained work. For the past year, I have received no money at all from my husband for my support." Also attached was an affidavit from Lieutenant J. Frank Cavanagh, dated June 1, 1951, reciting the crimes for which the appellant was charged, that he "has fled from the limits of said Commonwelath and is a fugitive from justice. And I further depose that at the time of the

commission of said crime he was in the City of Brockton in the County of Plymouth of said Commonwealth, and that at the same time and previous thereto he was a resident of said Brockton of Plymouth County; that he fled from said Commonwelath of Massachusetts on on or about the fifteenth day of September A.D. 1951 [evidently 1941]; that he is not now within the limits of the Commonwealth, but, as I have reason to believe, is now in Beltsville in the State of Maryland. The grounds of my knowledge are a letter from Captain G. E. Davidson of the Maryland State Police stating that Charles Lincoln was taken into custody and released on bond."

As a result appellant was taken into custody, and an extradition hearing was held before one of the Assistants to the Attorney General at the State House in Annapolis and upon his recommendation, Governor McKeldin of Maryland on July 11, 1951, issued his rendition warrant. This warrant alleged the demand by the Governor of Massachusetts for the "delivery of Charles Lincoln now alleged to be within the jurisdiction of this State as a fugitive from the justice of the State of Massachusetts as defined by the Constitution and Laws of the United States"; that the demand "is accompanied by a copy of Indictment charging such alleged fugitive with Abandonment, Desertion and Non-Support of Wife a crime under the laws of the said State of Massachusetts." This rendition warrant authorized Lt. J. Frank Cavanagh, Agent of the State of Massachusetts, "forthwith to take and transport the said Charles Lincoln to the line of this State at your own expense."

On July 13, 1951, appellant filed a petition for a writ of *habeas corpus*. Judge John B. Gray signed an order that the writ issue. At the end of testimony and argument Judge Gray dismissed the petition and remanded the appellant to the custody of Lt. Cavanagh to be extradited to Massachusetts. After leave granted by this Court, the appellant appeals here.

The appellant contends that the trial court erred in refusing to admit evidence that he deeded his interest in certain real estate to his wife and believed that as a result she had released him from his marital obilgations. With this contention we do not agree. In a hearing on extradition the guilt or innocence of the accused as to the crime of which he is charged cannot be inquired into, except as it may involve the identity of the person charged. Code, 1939, Article 41, Section 31. *Audler v. Kriss,* 197 Md. 362, 79 A. 2d 391. For the same reason appellant's statement that he left Massachusetts with his wife's consent is not before us here.

Code, 1939, Article 41, Section 14, provides for the extradition of persons charged in the demanding State with "treason, felony, or other crime, who has fled from justice and is found in this State." Code, Article 41, Section 18, Acts of 1937, Chapter 179, Section 13F, provides: "(Extradition of Persons Not Present in Demanding State at Time of Commission of Crime.) The Governor of this state may also surrender, on demand of the Executive Authority of any other state, any person in this state charged in such other state in the manner provided in Section 15 with committing an act in this state, or in a third state, intentionally resulting in a crime in the state whose Executive Authority is making the demand, and the provisions of this sub-title not otherwise inconsistent, shall apply to such cases, even though the accused was not in that state at the time of the commission of the crime, and has not fled therefrom." Appellant contends that he is not charged with "committing an act" in this State which would authorize extradition under Section 18, *supra,* but only with failure to act.

It is now provided in Maryland, contingent on reciprocal legislation, by Chapter 301 of the Acts of 1951, effective June 1, 1951, Article 890, Support of Dependents, Section 5: "Interstate Rendition. The Governor of this State (1) may demand from the Governor of

any other state the surrender of any person found in such other state who is charged in this State with the crime of failing to provide for the support of any person in this State and (2) may surrender on demand by the Governor of any other state any person found in this State who is charged in such other state with the crime of failing to provide for the support of a person in such other state. The provisions for extradition of criminals not inconsistent herewith shall apply to any such demand although the person whose surrender is demanded was not in the demanding state at the time of the commission of the crime although he had not fled therefrom. Neither the demand, the oath nor any proceedings for extradition pursuant to this section need state or show that the person whose surrender is demanded has fled from justice, or at the time of the commission of the crime was in the demanding or the other state." Under this Act, "State" by definition "includes any state, territory or possession of the United States and the District of Columbia in which this or a substantially similar reciprocal law has been enacted." We have been unable to find that Massachusetts has enacted a substantially similar reciprocal Act.

It appears that the appellant was lawfully extradicted under Code, Article 41, Section 14, *supra*. He is charged under the first and second counts in the Massachusetts indictment, among other charges on September 15, 1941, in Massachusetts with abandoning his wife and leaving her in danger by becoming a burden upon the public; and with deserting her by going into another city or state, leaving her without making reasonable provision for her support. From the affidavit of Lieutenant Cavanagh the appellant was in the State of Massachusetts at the time of the commission of these alleged offenses of abandonment and desertion and fled from said State. Appellant himself does not deny that he was in Massachusetts on September 15, 1941. He admits he left Massachusetts "about September of 1941". Abandonment and desertion are crimes under the laws of the

State of Massachusetts. General Laws of Massachusetts, Chapter 273, Section 1.

It was said by this Court in the case of *Audler v. Kriss, supra,* 197 Md. at page 365, 79 A. 2d at page 394: "It was contended that he was not a fugitive from the justice of Virginia. The question of fact to be tried on *habeas corpus* is not whether the accused is guilty or innocent of the charge brought against him in the demanding State, but whether he is properly held in the asylum State under the Governor's warrant by virtue of Article 4, Section 2, of the Constitution of the United States and the Act of Congress, 18 U. S. C. A. Section 3182, passed in furtherance thereof. *Appleyard v. State of Massachusetts,* 203 U. S. 222, 27 S. Ct. 122, 51 L. Ed. 161; *Biddinger v. Commissioner of Police of City of New York,* 245 U. S. 128, 38 S. Ct. 41, 43, 62 L. Ed. 193. Hence, the specific question to be determined from the evidence in this case was whether or not petitioner was in Halifax County at the time of the burglary."

In *Appleyard v. Massachusetts,* 203 U. S. 222, 27 S. Ct. 122, 123, 51 L. Ed. 161, *supra,* the appellant was indicted in New York State for grand larceny. A requisition was made upon the Governor of Massachusetts for the accused. The Supreme Court of the United States said in that case: "Upon a careful scrutiny of the record we discover no ground for the assertion that the detention of the appellant is in violation of the Constitution or laws of the United States. The crime with which he is charged is alleged in the indictment to have been committed at Buffalo, New York, on May 18th, 1904. It is, we think, abundantly established by the evidence that he was personally present in that city on that day, and that thereafter he left New York, although there was some evidence to the effect that on the particular day named he was not in the State. In his own affidavit, submitted and accepted as evidence, the accused specified several days when he was in Buffalo, prior to and subsequent to May 18th, 1904, but, as stated by the attorney general of Massachusetts in his report to the governor

of that commonwealth, there was in that affidavit no statement directly denying that he was in New York at the time and place indicated in the indictment. * * * The constitutional provision that a person charged with crime against the laws of a State and who flees from its justice, must be delivered upon proper demand, is sufficiently comprehensive to embrace any offense, whatever its nature, which the State, consistently with the Constitution and laws of the United States, may have made a crime against its laws. *Commonwealth of Kentucky v. Dennison*, 24 How. 66, 69, 16 L. Ed. 717; *Ex parte Reggel*, 114 U. S. 642, 650, 15 S. Ct. 1148, 29 L. Ed. 250, 252. So that the simple inquiry must be whether the person, whose surrender is demanded is in fact a fugitive from justice, not whether he *consciously* fled from justice in order to avoid prosecution for the crime with which he is charged by the demanding State. A person charged by indictment or by affidavit before a magistrate with the commission within a State of a crime covered by its laws, and who, after the date of the commission of such crime, leaves the State—no matter for what purpose or with what motive, nor under what belief—becomes, from the time of such leaving, and within the meaning of the Constitution and the laws of the United States, a fugitive from justice, and if found in another State must be delivered up by the governor of such State to the State whose laws are alleged to have been violated, on the production of such indictment or affidavit, certified as authentic by the governor of the State from which the accused departed. Such is the command of the supreme law of the land, which may not be disregarded by any State. The constitutional provision relating to fugitives from justice, as the history of its adoption will show, is in the nature of a treaty stipulation entered into for the purpose of securing a prompt and efficient administration of the criminal laws of the several States—an object of the first concern to the people of the entire country, and which each State is bound, in fidelity to the Constitution, to recognize. A

faithful, vigorous enforcement of that stipulation is vital to the harmony and welfare of the States. And while a State should take care, within the limits of the law, that the rights of its people are protected against illegal action, the judicial authorities of the Union should equally take care that the provisions of the Constitution be not so narrowly interpreted as to enable offenders against the laws of a State to find a permanent asylum in the territory of another State."

The question is raised whether it appears from the face of the papers in this case that limitations have run against abandonment and desertion in Massachusetts on September 15th, 1941. From Chapter 277, Section 63, General Laws of Massachusetts, 1932, Vol. 2, it seems that such is not the case. However, that question is not before us here. In *Biddinger v. Commissioner of Police*, 245 U. S. 128, 38 S. Ct. 41, 43, 62 L. Ed. 193, *supra*, the Supreme Court of the United States in a case in which extradition was sought by the State of Illinois from the State of New York said: "The statute of limitations is a defense and must be asserted on the trial by the defendant in criminal cases, *United States v. Cook*, 17 Wall. 168; and the form of the statute in Illinois, which the appellant seeks to rely upon, makes it especially necessary that the claimed defense of it should be heard and decided by the courts of that State * * *."

*Order affirmed, with costs.*