STATE EX REL. CHANNELL *v.* MURPHY, CAPTAIN

[H. C. No. 1, October Term, 1953 (Adv.]

*Decided May 13, 1953.*

Before SOBELOFF, C. J., and DELAPLAINE, HENDERSON and HAMMOND, J., delivered the opinion of the Court.

HAMMOND, J., delivered the opinion of the Court.

Harold H. Channell applies for leave to prosecute an appeal from the refusal of the writ of *habeas corpus* sought to release him from custody under a warrant of rendition issued by the Governor of Maryland, under an extradition warrant from the State of California. Channell was charged by that State with burglaries committed there on November 30 and December 1, 1952. After his refusal to waive extradition, a hearing was held before an Assistant Attorney General, which resulted in the Governor's issuance of the warrant of rendition. Channell then petitioned for a writ of *habeas corpus*, as permitted by Article 41, Section 24 of the Code (1951 Ed.), and Judge Manley, of the Supreme Bench of Baltimore City, after a hearing, refused to grant the writ.

The petitioner does not challenge the formal sufficiency of the extradition papers nor does he seek inquiry into his guilt, ". . . except as it may be involved in identifying the person held as the person charged with the crime". Article 41, Section 33 of the Code (1951 Ed.). He contends, however, that the evidence produced at the hearing shows that he was not a fugitive from California justice; indeed that it shows conclusively that he was in Baltimore at the time the alleged crimes were committed.

It is well settled that in an application under Article 41, Section 24 of the Code (1951 Ed.), the court may inquire into whether the accused was present in the demanding state at the time the crime was committed. *Willin v. Sheriff*, 201 Md. 667, 95 A. 2d 87; *Audler v. Kriss*, 197 Md. 362, 79 A. 2d 391; and *State ex rel. Zack v. Kriss*, 195 Md. 559, 74 A. 2d 25.

The warrant issued by the Governor of the asylum state raises a presumption that the accused is the fugitive

wanted, sufficient if unrebutted, to justify his arrest and detention and his delivery to the agent of the demanding state; unless he shows beyond a reasonable doubt that he was not a fugitive; if he does, he is entitled to his release. *Audler v. Kriss* and *State ex rel. Zack v. Kriss, supra.* See *Young v. Matthews,* 174 F. 2d 35, where the demanding state produced no evidence to contradict the testimony of the accused's witnesses that he was not in that State when the crime was committed, and he was released.

However, a conflict of evidence is not sufficient to overcome the presumption. Rather, "The evidence to overcome the presumption must be overwhelming." *State ex rel. Zack v. Kriss, supra.* The petitioner produced eight witnesses to establish the fact that he was in Baltimore on November 29 and 30 and on December 1, 1952. The lower court knew some of the witnesses and expressed his respect for their integrity. They included at least four business men of substance and standing in the community. Other witnesses were the petitioner's son, the maid at the Knights of Columbus Club, where the petitioner lived, a taxicab owner, and a taxicab driver. All testified to having seen Channell on one of three days, and several, on two of the three days. If we assume, without deciding, that the testimony as to Channell's presence in Baltimore on Saturday, November 29, and on Sunday, November 30, up to noon, is overwhelming and conclusive, the same cannot be said for the testimony as to his presence after noon on Sunday, which, when challenged, as it was, does not eliminate all reasonable doubt that he was in California on December 1, 1952. The State produced Mrs. Sascha G. Newman, the wife of an executive of a moving picture studio, who lives in California near Los Angeles. She was at home on December 1, 1952 in her bedroom, when she happened to glance out the window and observed a black 1952 Cadillac parked at the end of her driveway, and as she was wondering why it was parked at the end of the drive instead of directly in front of the house, she thought she saw

a shadow or "something peculiar" in her dressing room, just beyond the bedroom. The time was 1:20 P.M. She went into her dressing room, noticed that all of the drawers and closets had been opened, and saw a man bending over the middle drawer of her dressing table. She asked him who he was and what he was doing. At this, the man stood up and took two or three steps toward her. He told her he was from the telephone company. When the man stepped toward her, he was as close as four or five feet from her. She testified that she had never seen the man again until she came into the Court room that morning. She identified the man who had been in her bedroom as Channell. She said further that she immediately phoned the Police Department, and that several weeks after the occurrence, and after she had inspected a number of photographs presented to her by the Los Angeles Police Department, she picked out the picture of Channell as that of the man who had been in her house. When she was asked on cross-examination how she recognized him, she said because: "I will never forget that face as long as I live." The lower court in his opinion, spoke of her as a "credible witness".

The State also produced a special agent of the Federal Bureau of Investigation, who had been with the Bureau for sixteen years, working on identification of "handwriting, hand printing, typewriter, and other related matters". His qualifications, as recited in his testimony, were impressive. He had compared two signatures of a purported Robert W. Kirk, a guest there at a relevant time, on the registration cards of the Hollywood Roosevelt Hotel with the handwriting of Channell on the hotel register of the Knights of Columbus Club and on a letter which he had written to Judge Chesnut. As the result of the comparison, he concluded that it was clear to him that the same man had written the Hollywood Roosevelt Hotel registration cards, the Knights of Columbus Club registry, and the letter to Judge Chesnut.

The State contends that Channell flew from Baltimore to California and that while there, he drove a black

1952 Cadillac. Mrs. Newman testified that she had flown from Los Angeles to New York, in order to be present at the trial, in something over nine hours.

We think that the testimony is neither conclusive nor overwhelming that Channell was not in California on December 1, 1952; he failed to meet his burden of showing this beyond a reasonable doubt.

The petitioner urges that the cases of *Audler v. Kriss* and *State ex rel. Zack v. Kriss, supra,* do not control, relying on the fact that in the *Audler* case, the petitioner produced three witnesses to testify that he was in the asylum state, against three witnesses who testified that he was in the demanding state at the critical time, and that this constituted "merely contradictory" evidence. He argues that because in the instant case, there were produced only two witnesses by the State—only one who testified to his actual presence—as compared with eight produced by him, the evidence is not merely contradictory but overwhelming or conclusive in his favor. The matter cannot be decided merely on the number of witnesses for and against the petitioner. In the case of *South Carolina v. Bailey,* 289 U. S. 412, 77 L. Ed. 1292, the ratio was twelve witnesses who placed the accused in the demanding state at the time of the crime, to twenty who placed him then in the asylum state. The highest Court in North Carolina ordered the release of the petitioner. The Supreme Court of the United States reversed, saying: "The record presents an irreconcilable conflict of evidence. It is not possible to say with certainty where the truth lies". The Court concluded that: "Stated otherwise, he should not have been released unless it appeared beyond reasonable doubt that he was without the State of South Carolina when the alleged offense was committed and, consequently, could not be a fugitive from her justice."

Judge Collins, in *State ex rel. Zack v. Kriss, supra,* summed up the authorities as follows, after saying that the evidence was merely contradictory as to whether the applicant was absent from the state: "It is not the

equivalent of an undisputed fact. This is not the proper proceeding to try the question of alibi. It has not been clearly and satisfactorily shown beyond a reasonable doubt, to overcome the otherwise controlling presumption, that the appellant is not a fugitive from Pennsylvania. The record here before us discloses 'only a conflict of evidence'. The evidence to overcome the presumption must be overwhelming." We find that this language is fully applicable under the facts of the instant case.

*Application denied, with costs.*