DRIVER *v.* STATE

[No. 16, October Term, 1952.]

*Decided November 14, 1952.*

The cause was argued before MARKELL, C. J., and DELAPLAINE, COLLINS and HENDERSON, JJ.

*Harold Buchman* for the appellant.

*Kenneth C. Proctor, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General, Anselm Sodaro, State's Attorney for Baltimore City,* and *James F. Price, Assistant State's Attorney,* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Jeremiah Driver, a Negro, 22 years old, is appealing here from a conviction by the Criminal Court of Baltimore for rape. He was tried for assault and sodomy upon one Negress and assault and rape upon another. The crimes were committed on the night of January 10, 1952.

The first girl attacked was Edna Hart, 19. She testified that at about 7 o'clock, while walking on Central Avenue on her way home from her work at the Johns Hopkins Hospital, appellant grabbed her, showed a pistol, and warned her not to scream. He walked with her for a number of blocks and took her into an alley, where he forced her to take off her clothing and submit to unnatural sexual intercourse. Her screams caused him to flee. She then picked up her clothing and went to the home of a friend, who called the police.

The second victim, Dolores Burns, 20, testified that at about 8:30 o'clock appellant grabbed her on Eager Street, pointed a pistol at her, and warned her that if she shouted he would kill her. She asserted that she was afraid to scream when he led her past her home and continued several blocks to a vacant lot, where he forced her to take off her clothes and then raped her. He walked back with her to her home and then fled.

Appellant was arrested that night at about 11 o'clock. In one of his pockets was a nickel-plated toy pistol. He was taken to the Northeastern Police Station for investigation and two hours later was interrogated. He declared that he was innocent. However, on the evening of January 12, after he was placed in a line-up and identified by both of the girls, he told the police: "That is true. I want to make a statement." He began his confession that evening at 8:10 o'clock. A transcript

was ready for his signature at 9:10 o'clock. He read it and signed it in the presence of five police officers.

The Court appointed an attorney to defend him, and the charges were tried together by the Criminal Court without a jury. At the trial each girl positively identified him as her assailant. But appellant repudiated his confession and swore that he had never seen either of the girls. He claimed that when he made the confession he was under great fear and answered the questions of the police "to fit into what they wanted." The Court admitted the confession in evidence, and found appellant guilty of both sodomy and rape and sentenced him to be hanged for rape.

*First.* Appellant contends that his signed confession should not have been admitted in evidence. He claims that he was unlawfully held by the police for 45 hours and during that time was subject to constant interrogation before he signed the confession, although there is no evidence that he was questioned at all until his identification by the two girls. He states that he went only as far as the sixth grade in school and had retarded mental development, and when he was held at the police station he was without counsel or friends. He asserts that he was in a state of great fear and nervousness, and contends that a confession made under such circumstances is obtained by coercion.

The Due Process Clause of the Fourteenth Amendment to the Federal Constitution, which guarantees appropriate procedure before liberty is curtailed or life is taken, bars systematic, protracted and uncontrolled subjection of an accused to interrogation by the police for the purpose of forcing a confession. *Watts v. State of Indiana,* 338 U. S. 49, 69 S. Ct. 1347, 93 L. Ed. 1801; *Turner v. Commonwealth of Pennsylvania,* 338 U. S. 62, 69 S. Ct. 1352, 93 L. Ed. 1810; *Harris v. State of South Carolina,* 338 U. S. 68, 69 S. Ct. 1354, 93 L. Ed. 1815. The systematic persistence of interrogation, the length of the periods of questioning, the failure of the police to advise the prisoner of his rights, the absence

of counsel or friends, and the character of the prisoner are circumstances that may be considered by the trial court in determining whether the accused was deprived of due process of law.

It is true that appellant did not have counsel until after he made his confession. But the mere fact that an accused makes a confession while in the custody of the police before he consults counsel does not render it inadmissible, even when he is not permitted to consult counsel, if it is given voluntarily. *Audler v. Kriss*, 197 Md. 362, 367-368, 79 A. 2d 391, 395.

In *Wright v. State*, 177 Md. 230, 9 A. 2d 253, the Court of Appeals held that a confession made by the accused, who was subjected to solitary confinement for twenty hours, with denial of counsel, for the obvious purpose of securing a confession, and to whom a police officer during such confinement was alleged to have made various threats and promises for that purpose, was inadmissible in evidence, as some of the allegations were not contradicted, and the confession was not shown to be voluntary.

The law is clear that, unless the facts show that an unlawful arrest in itself constitutes such duress as to make a confession signed by the defendant while under arrest involuntary, the same rule as to admissibility of the confession is applicable as where the arrest is lawful. *Cox v. State*, 192 Md. 525, 64 A. 2d 732; *James v. State*, 193 Md. 31, 65 A. 2d 888; *Grear v. State*, 194 Md. 335, 71 A. 2d 24. It has not been shown that appellant was held unlawfully by the police. In *James v. State*, 193 Md. 31, 65 A. 2d 888, this Court held that the confession of the accused was admissible in evidence, where he was not arraigned or charged with the crime until more than 43 hours after the arrest and did not see counsel or friends before signing the confession 48 hours after the arrest, and he was questioned by the police several times, but not at exhausting lengths, and was not deprived of food or sleep or subjected to any personal indignities.

There is nothing in the record now before us to show that appellant was denied due process of law. There is no evidence that he was questioned until after his identification. The police officers testified that they made no threats and gave no promises or inducements to obtain the confession. Appellant made no complaint that he had been threatened or coerced. Nor did he make any complaint that he had been ill-treated by the police. He admitted that they gave him good food and treated him well. He now says that some of his clothing was taken from him, but the State explains that this was done so that chemical tests could be made for blood stains, and that the police arranged with his family to get some other pieces of clothing for him as promptly as possible.

*Second.* Appellant complains that the judge, after the trial but before pronouncing sentence, was improperly influenced by reading the report of the Chief Medical Officer. The particular part of the report to which he objects is the statement: "It is also rumored that he raped a white woman and approached another white child." He claims that he did not have the opportunity to refute that statement.

Under the procedure often followed by the courts in this country, the defendant, after he is convicted, is informed by the court that he will be investigated before sentence is imposed, and the court can exercise a broad discretion in the use of sources and types of evidence to assist it in determining the kind and extent of punishment to be imposed within the limits fixed by law. In the instant case the judge was invested with discretion to sentence defendant either to suffer death or to undergo confinement in the penitentiary for life or for not less than 18 months nor more than 21 years. Code 1951, are. 27, sec. 557. To aid the sentencing judge in exercising this discretion intelligently, the procedural policy of the State encourages him to consider information concerning the convicted person's reputation, past offenses, health, habits, mental and moral propensities, social

background and any other matters that a judge ought to have before him in determining the kind of sentence that should be imposed. In such cases, however, any information which might influence his judgment, which has not been received from the defendant himself or has not been given in his presence, should be called to his attention, or to the attention of his counsel, without necessarily disclosing the sources of such information, so that he may be afforded an opportunity to refute or discredit it. *Zeff v. Stanford,* D. C., 31 F. Supp. 736, 738. However, the procedure in the sentencing process is not the same as that in the trial process. It is a fundamental principle that a person accused of crime shall not be convicted unless he is given reasonable notice of the charge and an opportunity to be heard in his defense and to examine adverse witnesses. But the sentencing judge may consider information, even though obtained outside the courtroom, from persons whom the defendant has not been permitted to confront or cross-examine. *Murphy v. State,* 184 Md. 70, 40 A. 2d 239.

In *Williams v. People of State of New York,* 337 U. S. 241, 69 S. Ct. 1079, 1084, 1085, 93 L. Ed. 1337, the defendant was convicted of murder. After a statutory pre-sentence investigation report was received by the judge, the defendant was brought into court to be sentenced. The defendant's attorneys appealed to the judge to accept the jury's recommendation of a life sentence, but the judge gave his reasons why he felt that the death sentence should be imposed. He stated that the pre-sentence investigation revealed many material facts concerning the defendant's background which could not have been brought to the attention of the jury. He referred to the defendant's experience in thirty other burglaries, although he had not been convicted of them. Neither defendant nor his attorneys challenged the accuracy of the statements made by the judge as to the defendant's background and past practices, nor did they request the judge to disregard any of the statements or afford them an opportunity to refute or discredit any of them.

The judgment of conviction was affirmed by the Court of Appeals of New York and by the Supreme Court of the United States. Justice Black, speaking for the Supreme Court, said: "Modern changes in the treatment of offenders make it more necessary now than a century ago for observance of the distinctions in the evidential procedure in the trial and sentencing processes. * * * Under the practice of individualizing punishments, investigational techniques have been given an important role. Probation workers making reports of their investigations have not been trained to prosecute but to aid offenders. Their reports have been given a high value by conscientious judges who want to sentence persons on the best available information rather than on gresswork and inadequate information. To deprive sentencing judges of this kind of information would undermine modern penological procedural policies that have been cautiously adopted throughout the nation after careful consideration and experimentation. We must recognize that most of the information now relied upon by judges to guide them in the intelligent imposition of sentences would be unavailable if information were restricted to that given in open court by witnesses subject to cross-examination. And the modern probation report draws on information concerning every aspect of a defendant's life. The type and extent of this information make totally impractical if not impossible open court testimony with cross-examination. Such a procedure could endlessly delay criminal administration in a retrial of collateral issues."

In the case at bar defendant's attorney evidently knew that the trial judge had authorized the Chief Medical Officer to make an investigation of appellant and to report to the Court. The report was duly made and was available to defendant and his counsel, and there is no reason to believe that the attorney did not read it. When the judge, before imposing sentence, asked appellant's attorney if he had anything to say, he replied that appellant had been drafted into the army, but was absent

34

without leave and subject to court martial. He further said that appellant had been found guilty of bastardy, but had not been convicted of any other offense. He did not object to any part of the Chief Medical Officer's report, or make any effort to refute it. We must assume that, in the absence of evidence to the contrary, the Court made proper use of the report and did not give consideration to anything based only upon rumor. Therefore, we find no basis for appellant's contention that he was deprived of due process of law.

*Judgment affirmed.*